IN RE the MARRIAGE OF:

Anne Marie ROSPLOCK, Petitioner-Appellant-Cross-Respondent,

v.

David ROSPLOCK, Respondent-Respondent-Cross-Appellant.†

Court of Appeals

*No. 96–3522. Submitted on briefs November 21, 1997.—Decided February 4, 1998.*

(Also reported in 577 N.W.2d 32.)

†Petition to review denied.

On behalf of the petitioner-appellant-cross-respondent, the cause was submitted on the briefs of *Lawrence P. Kahn* of *Lawrence P. Kahn, Ltd.* of Bayside.

On behalf of the respondent-respondent-cross-appellant, the cause was submitted on the briefs of *Lisa A. Smith* of *Schwei & Wendt, S.C.* of Brookfield.

Before Snyder, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J. Anne Marie Rosplock appeals from a trial court order granting David Rosplock's motion for a modification of maintenance. Anne raises two challenges to the order: (1) the trial court erroneously exercised its discretion when it went beyond the unambiguous language of the parties' stipulation which recited how Anne's limited-term maintenance was to be computed; and (2) the trial court erred in finding that Anne's income from sources not existing at the time of the divorce constituted a substantial change in circumstances. We conclude that the limited-term maintenance stipulation is unambiguous and that the trial court erred by modifying its terms. We further conclude that there has not been a substantial change in circumstances warranting relief from the stipulation and judgment. We reverse the trial court order.

## FACTS

Anne and David were divorced on July 3, 1991, after approximately twenty-one years of marriage. When the judgment of divorce was entered, Anne was employed as a real estate broker and David operated a used car dealership. Both parties were self-employed and had reported all of their income on Schedule C of their federal income tax returns.

At the time of the divorce and with the aid of counsel, the parties entered into a stipulation resolving all issues. In the accompanying footnote, we set out the maintenance terms of the stipulation in full.[1] In sum-

---

[1] The terms of the stipulation as set forth in the judgment of divorce are as follows:

12. Maintenance:
　　A. Maintenance for the Petitioner.

24

mary, the stipulation provided that David would pay Anne maintenance in the amount of $1500 per month

1. The respondent shall pay to the petitioner for a period of ten years commencing on August 1, 1991, and terminating on July 31, 2001 via payment to the Clerk of Circuit Court, $1,500.00 per month, payable in equal installments of $750.00 each on the first and fifteenth of each month and as follows:

2. If during any calendar year the petitioner's income as evidenced on schedule C of her federal income tax returns is in excess of $20,000.00, maintenance payable to the petitioner from the respondent shall be reduced to $1,200.00 per month payable in equal installments of $600.00 each on the first and fifteenth of each month. Payment on that amended maintenance figure should commence on May 1, following the end of the calendar year and should run through April 30 of the next calendar year.

3. If during any calendar year the petitioner's income as evidenced on schedule C of her federal income tax returns is in excess of $25,000.00, maintenance payable to the petitioner from the respondent shall be reduced to $1,000.00 per month payable in equal installments of $500.00 each on the first and fifteenth of each month. Payment on that amended maintenance figure should commence on May 1, following the end of the calendar year and should run through April 30 of the next calendar year.

4. If during any calendar year the petitioner's income as evidenced on schedule C of her federal income tax returns is in excess of $30,000.00, maintenance payable to the petitioner shall be suspended for the following year, and consequently no payment shall be due from the respondent to the petitioner from May 1 through April 30 of that following year.

5. Maintenance shall be paid according to the terms enumerated herein above for ten years. Consequently, if one year the petitioner's income is greater than $30,000.00, no maintenance shall be due for the following year. But if during the subsequent year the petitioner makes less than $30,000.00, maintenance will again be due and owing to the petitioner from the respondent as detailed above.

6. The petitioner agrees to provide copies of her annual income tax returns including schedule C, which will be the basis for

25

for a limited term of ten years as long as Anne's Schedule C income did not exceed $20,000. If, however, Anne's Schedule C income increased, the stipulation recited a formula by which her maintenance payments would correspondingly decrease for the following year. Specifically, if Anne's Schedule C income exceeded $20,000, the maintenance payments would be reduced to $1200 per month; if Anne's Schedule C income exceeded $25,000, the maintenance payments would be reduced to $1000 per month; and if Anne's Schedule C income exceeded $30,000, the maintenance payments would be suspended.[2]

With respect to property division, the stipulation awarded the parties' residence and the majority of the personal property to David. In exchange, the stipulation provided that David would pay an equalizing payment to Anne in the amount of $80,000. Judge Willis Zick, who heard the divorce action, approved the parties' stipulation and incorporated it into the judgment of divorce.

After the divorce, Anne utilized portions of her property division to purchase two rental properties: a condominium and a duplex. Anne's rental income from these properties totaled $1300 per month.[3] In addition,

---

any decreases or increases in maintenance, to the respondent on or before April 30 of each year.

. . . .

[2] The stipulation also provided a reverse process for increasing maintenance payments if, after a decrease in the maintenance payments, Anne's Schedule C income should decrease. In such a case, the maintenance payments would be increased for the following year pursuant to the same formula.

[3] Anne's daughter from a previous marriage lived in the rental condominium for approximately four years, until March 1995. During this time she paid Anne $300 per month. In July

Anne purchased an additional condominium for her residence. Since the divorce, various people have lived with Anne and have contributed to the household expenses.[4]

Following the divorce, Anne continued her work as a real estate broker. However, she also began working as a full-time secretary for the real estate agency in order to earn additional income and to obtain health insurance coverage. When Anne began working as a secretary she was paid $7.50 per hour. At the time of the postjudgment proceedings, she was earning $8.11 per hour. For tax purposes, Anne reported this as employee income, not as Schedule C self-employment income.

On August 16, 1995, David filed a motion seeking modification or suspension of the maintenance payments. In support, David contended that Anne's income from her secretarial position, rental properties, and cohabitants—when added to her Schedule C income from her real estate broker activities—produced overall income warranting a decrease or suspension of maintenance in accordance with the divorce judgment. The motion was heard by Court Commissioner Gerald Janis.

Commissioner Janis denied David's motion. Relying on the clear terms of the stipulation and judgment, Commissioner Janis ruled that "[t]he only thing to be

1995, the parties' daughter, Heather, moved into the rental condominium and paid Anne $500 per month in rent.

[4] From the fall of 1993 to January 1996, Anne cohabited with Leonard Gumina. Although Gumina did not pay rent, he contributed $200 per month for household expenses. Additionally, Heather and her boyfriend resided with Anne from August 1994 until March 1995, each contributing $100 to $200 on an inconsistent basis.

taken into consideration when it came time to reduce [David's] amount of maintenance to be paid was [Anne's] Schedule C income." Because Anne's Schedule C income did not exceed $20,000, Commissioner Janis rejected David's request for a reduction or suspension of maintenance.

David sought and received a de novo hearing on his motion. The motion was heard by Judge James Kieffer. Following the hearing, Judge Kieffer entered an order setting forth the following findings:

1. The Court finds that there has been a substantial change in circumstances in that [Anne] has added to her employment. At the time of the divorce, she was a real estate broker and at this time she is a real estate broker and a secretary.

2. The Court finds as a further substantial change of circumstance that [Anne] has utilized portions of her property division and maintenance to purchase other assets which, in turn, generate additional income for her. Those assets are a duplex and two condominiums.

3. The Court finds that as a further substantial change in circumstance that [Anne] has had a live-in relationship with a Mr. Gumina in 1994, 1995 and into April of 1996. Mr. Gumina has paid a paltry sum toward the financial responsibilities of the household and has apparently contributed $200.00 per month toward food expense.

4. The Court finds as a further substantial change in circumstance that [Anne] has had two daughters, who she has collected rent

from for a period of time, either at home or in her rental properties.

5. Considering all of the above factors, the Court believes that a substantial change in financial circumstances has occurred and that the Court is warranted in making a broad interpretation of the formula and schedule for modification of maintenance as set forth in the parties' Judgment of Divorce. . . .

Judge Kieffer then addressed the terms of the stipulation. Although not expressly using the word "ambiguous," the judge stated that "[the stipulation] has enough holes [in] it, a Mack truck could run right through [it]." The judge concluded that neither the parties nor Judge Zick intended the stipulation to apply only to Anne's Schedule C income. Instead, Judge Kieffer concluded that the parties and Judge Zick intended the stipulation to embrace all of Anne's income. Based on that construction of the stipulation, Judge Kieffer computed all of Anne's income for the years in question and reduced David's maintenance obligation to $1000 per month from September 1, 1995, through April 30, 1996, and to $1200 per month from May 1, 1996, to April 30, 1997. Anne appeals.

## DISCUSSION

### The 1993 Stipulation and Judgment

As a threshold matter, Anne argues that the parties' maintenance stipulation as incorporated into the judgment of divorce is clear and unambiguous. Anne argues that the trial court erroneously exercised its discretion when it went beyond the terms of the stipulation and judgment. We agree.

■

A stipulation incorporated into a divorce judgment is in the nature of a contract. *See Kastelic v. Kastelic,* 119 Wis. 2d 280, 287, 350 N.W.2d 714, 718 (Ct. App. 1984). The construction of a written contract presents a question of law which we review de novo. *See Wausau Underwriters Ins. Co. v. Dane County,* 142 Wis. 2d 315, 322, 417 N.W.2d 914, 916 (Ct. App. 1987). Whether a contract is ambiguous is also a question of law that we decide independently of the circuit court's decision. *See id.* Nonetheless, we value a trial court's decision on a question of law. *See Scheunemann v. City of West Bend,* 179 Wis. 2d 469, 475, 507 N.W.2d 163, 165 (Ct. App. 1993).

■

A written contract is ambiguous if it is reasonably susceptible to more than one meaning. *See Wausau Underwriters,* 142 Wis. 2d at 322, 417 N.W.2d at 916. Here, the parties' stipulation sets out clearly and unequivocally that Anne's Schedule C income is the barometer by which Anne's maintenance payments were to be determined. Equally clear and unambiguous is the mathematical formula for adjusting those payments. Thus, if Judge Kieffer's remark that the stipulation had "enough holes . . . [that] a Mack truck could run right through [it]" stands for a holding that the stipulation was ambiguous, we disagree.

■

We suspect that what Judge Kieffer really meant was that the stipulation was imprudent or deficient because it covered only Anne's Schedule C income. Instead, it appears that the judge believed that the stipulation *should have* embraced all of Anne's income. Our suspicion is based on the judge's further statement that this is what the parties and Judge Zick truly

30

intended, even though the stipulation did not so state. However, when a contract is plain and unambiguous, a court will construe it as it stands without looking to extrinsic evidence to determine the intent of the parties. *See Eden Stone Co., Inc. v. Oakfield Stone Co.*, 166 Wis. 2d 105, 115, 116, 479 N.W.2d 557, 562 (Ct. App. 1991). A court may not use the mechanism of construction to review an unambiguous contract in order to relieve a party from any disadvantageous terms to which the party has agreed. *See Old Tuckaway Assocs. Ltd. Partnership v. City of Greenfield*, 180 Wis. 2d 254, 280–81, 509 N.W.2d 323, 333 (Ct. App. 1993). In short, a court may not rewrite a clear and unambiguous contract. We conclude that the judgment must be construed to mean what it clearly says.[5]

---

[5] David also contends that the following language included in the judgment creates ambiguity:

> [Anne] agrees to provide copies of her annual income tax returns including schedule C, which will be the basis for any decreases or increases in maintenance, to [David] on or before April 30 of each year.

David argues that "[i]f the only income . . . that is relevant to the maintenance issue is that evidenced in Schedule C of her federal income tax returns, it makes no sense that this reference is not found throughout the entire section." We are unpersuaded that this provision of the judgment alters the clear and unambiguous terms of the parties' stipulation or Judge Zick's approval of it. The stipulation clearly uses *only* Anne's Schedule C income as the measure for computing any increase or decrease in the maintenance payments.

David has cross-appealed, contending that Judge Kieffer erred in calculating Anne's rental income from her daughters and by failing to impute reasonable rental income to Anne, rather than the actual payments made to her by her live-in companion. These arguments, however, are premised upon David's contention that the parties' stipulation embraced all of

## Substantial Change in Circumstances

Having concluded that the parties' stipulation embraced all of Anne's income regardless of source, Judge Kieffer then determined that the income generated by Anne's employment as a secretary, the rental income and the additional payments made by third parties who resided with Anne in her residence constituted a substantial change of circumstances.[6] We disagree.

█

Section 767.32(1)(a), STATS., allows the family court to modify maintenance when it concludes that there has been a substantial change in circumstances. "Absent a substantial change in circumstances, a provision in a judgment for maintenance payments which was based on a stipulation may not be modified." *Fobes v. Fobes,* 124 Wis. 2d 72, 81, 368 N.W.2d 643, 647 (1985); *see also Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 195, 327 N.W.2d 674, 677 (1983).

The question of whether there has been a substantial change of circumstances presents a mixed question

---

Anne's income. Since we have held that it does not, we need not address these issues. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

[6] Because Judge Kieffer's construction of the parties' stipulation was closely related to the judge's further holding that a substantial change in circumstances had occurred, we have considered whether our resolution of the first issue eliminates any need to discuss this further issue. We conclude it does not. If Anne's additional income is significant enough such that it would be unjust or inequitable to hold David to the stipulation and judgment, such could constitute a basis for modifying maintenance regardless of the parties' stipulation. *See Fobes v. Fobes,* 124 Wis. 2d 72, 81, 368 N.W.2d 643, 647 (1985).

of fact and law. *See Harris v. Harris,* 141 Wis. 2d 569, 574, 415 N.W.2d 586, 588–89 (Ct. App. 1987). The trial court's findings of fact regarding the "before" and "after" circumstances and whether a change has occurred will not be disturbed unless clearly erroneous. *See id.* However, whether the change is substantial is a question of law which we review de novo. *See id.* at 574, 415 N.W.2d at 589.

A " 'substantial or material change in the circumstances should be such that it would be unjust or inequitable to strictly hold either party to the judgment.' " *Fobes,* 124 Wis. 2d at 81, 368 N.W.2d at 647 (quoted source omitted). Because the trial court's legal determination is intertwined with its factual findings, we nevertheless give weight to the trial court's decision. *See Harris,* 141 Wis. 2d at 574–75, 415 N.W.2d at 589.

We begin by stating our full agreement with all of the factual determinations made by Judge Kieffer. The evidence clearly showed that Anne had additional income which did not exist at the time of the divorce; i.e., her secretarial income, her rental income and the payments by those who resided with her. We part ways with Judge Kieffer, however, on the legal question of whether these facts constitute a substantial change in circumstances under the facts of this case and under the law of limited-term maintenance.

Anne and David agreed that Anne would receive maintenance for a limited term of ten years. The purposes of limited maintenance include "providing the recipient spouse with funds for training that might lead to employment, creating an incentive for that spouse to seek employment, and limiting the responsibility of the payor-spouse to a time certain and avoiding future litigation." *Bentz v. Bentz,* 148 Wis. 2d

400, 406, 435 N.W.2d 293, 295 (Ct. App. 1988). A further goal of limited-term maintenance is to render the recipient spouse self-supporting. *See id.* In determining whether limited-term maintenance should be approved in a divorce, the trial court must consider,

> the ability of the recipient spouse to become self-supporting by the end of the maintenance period at a standard of living reasonably similar to that enjoyed before divorce; the ability of the payor spouse to continue the obligation of support for an indefinite time; and the need for the court to continue jurisdiction regarding maintenance.

*See id.* (quoting *LaRocque v. LaRocque*, 139 Wis. 2d 23, 41, 406 N.W.2d 736, 743 (1987)).

Here, Judge Zick's decision to grant Anne limited-term maintenance did not result from a full-blown trial of the issue. If that were the case, we would look to the judicial decision to see if it passed muster under the law governing an award of limited-term maintenance. Instead, the grant of limited-term maintenance in this case stemmed from the parties' stipulation. Under those circumstances, it is fair to conclude that the parties—particularly David—acknowledged that some or all of the purposes for limited-term maintenance existed in this case. It follows, then, that when David sought to reduce or terminate the limited-term maintenance on the grounds that Anne's financial condition had improved, David, as the moving party, had the burden to show that the purposes of the limited-term maintenance had been satisfied. *See Van Gorder*, 110 Wis. 2d at 195–96, 327 N.W.2d at 678. None of David's evidence rises to that level in this case.

Here, David's responsibility to contribute to Anne's support was limited to a term of ten years. The

34

purpose of that support was, at least in part, to put Anne solidly on her financial feet so that she could support herself and so that she could maintain a standard of living reasonably similar to that enjoyed before the divorce. *See Bentz*, 148 Wis. 2d at 406, 435 N.W.2d at 295. To those ends, Anne sought employment as a real estate secretary in addition to her position as an independent real estate broker. She did so in order to increase her income and obtain health insurance coverage. Anne's supplemental employment, together with her limited-term maintenance, will hopefully ensure that she is self-supporting by the end of the maintenance period and is able to attain a standard of living reasonably comparable to that enjoyed before the divorce. Anne's diligence in this regard is consistent with, not contrary to, the purpose of the limited-term maintenance award.

Judge Kieffer determined that the additional income generated "a change not envisioned . . . at the time of this divorce." We disagree. Anne's attainment of additional and steady employment, which also enabled her to obtain health insurance coverage, coupled with her limited-term maintenance payments, is in keeping with the very goals which limited-term maintenance seeks. This is not a situation in which Anne has obtained extremely lucrative employment or experienced some other unanticipated financial windfall. To the contrary, Judge Kieffer correctly found that Anne's total income was $25,328 in 1994 and $21,877 in 1995. We conclude that the income generated from Anne's employment as a secretary, even when added to her other income, does not present a substantial change of circumstances sufficient to undo the limited-term maintenance provisions of the judgment.

35

Judge Kieffer also held that Anne's rental income represented a substantial change in circumstances. Judge Kieffer commended Anne in stating that she had, "through excellent foresight on her part[,] utilized portions of her property division, and . . . maintenance payments from [David] in turning around and purchasing other assets." Nevertheless, the judge determined that the income generated by those assets represented a substantial change of circumstances because it "was not envisioned by [the trial court] when [it] initially set this maintenance award."

We disagree with this reasoning. Pursuant to the stipulation, the parties agreed that Anne would receive limited-term maintenance and an $80,000 balancing payment on the property division. We think it is beyond dispute that both the parties and Judge Zick envisioned that each party would manage their respective property division awards in a productive fashion. Indeed, the record bears out that David has also wisely managed his assets. Surely the parties and Judge Zick did not envision that Anne's $80,000 award would lie dormant. Thus, Anne's prudent and positive management of her property division award was well within the expectations of both parties when they made their agreement to provide Anne with limited-term maintenance.

Were we to rule that Anne's rental income now defeats her entitlement to limited-term maintenance, we would undo one of the fundamental premises upon which the parties' stipulation, *both as to maintenance and property division*, was constructed. Again, in keeping with the purposes of limited-term maintenance, we conclude that Anne's efforts to maximize the value of her property division and transform it into additional income was well within the foreseeability of the parties

36

at the time the stipulation was made. And again, the amounts of this income are not of a dimension which constitute a substantial change in circumstances.

We additionally reject David's argument that the income which Anne received from persons living with her at various times so changed her financial circumstances that a reduction in maintenance is warranted. The trial court found that the contributions made to the household by Anne's live-in companion and her daughters represented a substantial change in circumstances. We disagree. "Cohabitation is only a factor to consider to the extent it may change a recipient former spouse's economic status." *Van Gorder,* 110 Wis. 2d at 197, 327 N.W.2d at 678. Here, Anne received $200 per month from her live-in companion and $100 to $200 from her daughter on an inconsistent basis. Anne testified that the money she received paid for only the groceries and the phone bill. We cannot say that the money received from Anne's cohabitants sufficiently changed her economic status so as to constitute a substantial change in circumstances.

In summary, although Anne's financial circumstances have changed since the divorce, the question is whether that change makes it unjust or inequitable to hold David to the limited-term maintenance provisions of the judgment. *See Fobes,* 124 Wis. 2d at 81, 368 N.W.2d at 647. We hold it does not.

## CONCLUSION

Limited-term maintenance does not serve only the interests of the recipient spouse. It also provides the payor spouse with some degree of assurance that the responsibility to pay maintenance is reduced to a time certain and, as such, it avoids future litigation. *See Bentz,* 148 Wis. 2d at 406, 435 N.W.2d at 295. Nonethe-

less, limited-term maintenance may be extended in an appropriate case. *See id.* at 407, 435 N.W.2d at 296. Here, Anne's efforts to improve her financial status offer David some assurance that his maintenance obligation will truly be limited to the time period stated. If those payments are suspended or reduced beyond the circumstances envisioned by the parties' stipulation, the purposes of the limited-term maintenance program agreed to by the parties may not be achieved. That development could trigger an extension, rather than a cessation, of the limited-term maintenance.

■ We conclude that the trial court erroneously exercised its discretion when it went beyond the terms of the parties' stipulation and the judgment based thereon to modify maintenance based on Anne's total income. The provisions for limited-term maintenance, as set forth in the divorce judgment, clearly and unambiguously require that a modification of maintenance be based upon Anne's Schedule C income.

We further conclude that Anne's additional sources of income following the divorce do not represent a substantial change of circumstances under the facts of this case and under the law of limited-term maintenance. The efforts and progress made by Anne following the divorce are in keeping with the purposes of limited-term maintenance and do not provide a basis upon which maintenance may be modified at this time. We reverse the order.

*By the Court.*—Order reversed.