COURT OF APPEALS
DECISION
DATED AND FILED

**November 2, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2021AP394**

**STATE OF WISCONSIN**

Cir. Ct. No.  2013FA385

**IN COURT OF APPEALS**
**DISTRICT III**

IN RE THE MARRIAGE OF:

KIM C. GRONEWOLD,

    PETITIONER-RESPONDENT,

  V.

JAN GRONEWOLD,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Jan Gronewold[1] appeals a postdivorce order, arguing that the circuit court erroneously exercised its discretion by concluding there was no substantial change in circumstances justifying a modification in his monthly maintenance obligation. We reject Jan's arguments and affirm the order.

## BACKGROUND

¶2     Jan and Kim Gronewold were married in December 1987. The parties divorced after nearly twenty-six years of marriage. At the time of the divorce, Jan's financial disclosure statement (hereinafter, "FDS") reflected that he was employed in sales with a base monthly income of $5,788.47 and that he had the possibility of earning monthly commissions ranging from $0 to $2,500. Kim's FDS revealed employment as a teacher's assistant with a monthly income of $1,691.

¶3     As part of the final divorce proceeding, the parties entered into a stipulation providing that effective November 13, 2013, Jan would pay maintenance to Kim in the amount of $1,200 monthly. Maintenance would continue at that level through the month during which the closing on the sale of the parties' residence occurred. Jan would thereafter pay maintenance of $2,100 monthly. Of that amount, $1,700 was to be paid by income assignment. In addition, Jan would also make quarterly payments to Kim in the amount of $1,200 on January 15, April 15, July 15, and October 15 of each year. The parties further agreed that an increase or decrease in Jan's income of twenty-five percent from the then-present level of $94,000 per year would be considered a substantial

---

[1] Because the parties share a surname, we refer to them individually by their first names.

change in circumstances allowing the circuit court to review the amount of maintenance payable by Jan.

¶4     In February 2014, Jan and Kim stipulated to a modification of maintenance. At that time, Kim's gross monthly income was $1,902 for each of the nine months of the school year. Jan's gross monthly income was $7,833.33, which included his base pay plus estimated commissions. Pursuant to the parties' stipulation, maintenance was modified from $1,700 in monthly payments plus $1,200 paid quarterly to $1,800 in monthly payments with no quarterly payments.

¶5     In May 2019, Jan filed a motion to modify maintenance, alleging that he had been laid off from his job. He asked the circuit court to set his maintenance obligation at zero dollars per month starting April 23, 2019, and continuing until he was reemployed. The family court commissioner held open the issue for more information. Jan's FDS showed monthly unemployment income of $1,591. Kim's FDS showed monthly gross income—which did not include maintenance—of $1,811.56.

¶6     After Jan's maintenance payments were suspended for three months due to his unemployment, he was able to secure employment as a sales agent earning a monthly income of at least $5,000 with the potential for commissions in future years. In July 2019, Jan filed a motion to modify maintenance from $1,800 per month to $1,200 per month. Thereafter, on July 29, 2019, the parties stipulated to a temporary sliding scale maintenance obligation for the period of August 1, 2019, through July 31, 2020. Jan's maintenance payments would range from $1,300 to $1,800 per month if his monthly income was between $5,000 and $7,833 or higher. Jan's maintenance obligation would be negotiated if his monthly income was less than $5,000. After July 31, 2020, maintenance would

revert to the previously stipulated amount of $1,800 per month. An August 6, 2019 order approved the stipulation.

¶7      On June 23, 2020, the parties entered into another stipulation, as Jan was again unemployed. The parties agreed that Jan's maintenance obligation would be waived beginning June 1, 2020, through September 30, 2020. The stipulation also provided that Jan's maintenance payments would automatically resume at the previously stipulated monthly amount of $1,800 effective October 1, 2020, or upon Jan's reemployment, whichever occurred first. The circuit court approved the parties' stipulation in an order dated June 24, 2020.

¶8      In October 2020, Jan filed a motion to terminate maintenance. In his affidavit in support of the motion, Jan noted that he was able to secure self-employment as a subcontractor making $6,000 per month, effective September 1, 2020, which was "nearly 25% less of the income [he] was earning at the time of the final [divorce] hearing." Jan also argued that other grounds supported the termination of his maintenance obligation including: Kim's increased income of $24,000 per year; Kim's engagement to a doctor with a "marriage-like relationship"; Jan's age and health issues; Kim's age; and Jan having insufficient funds to save for retirement and to pay bills. At the time of his motion, Jan's FDS revealed he had gross monthly income of $5,832 and monthly medical insurance premiums of $938.57. Kim's FDS revealed gross monthly income of $2,033.33 for nine months of the year.

¶9      The family court commissioner denied Jan's motion. The commissioner concluded that Jan failed to show how his medical conditions adversely affected his ability to generate income or his earning capacity. Jan subsequently filed a timely request for de novo review by the circuit court.

¶10    At the de novo hearing, Jan argued that his gross monthly income had decreased to $5,832 as compared to $7,833 at time of the final divorce hearing.  In addition, at the time of the de novo hearing, Jan was required to pay self-employment tax and health insurance at a monthly cost of nearly $1,000, along with other business-related expenses.  With these expenses, Jan contended his monthly net income was only $2,376, and with the maintenance obligation of $1,800, he had insufficient income to "survive."  Jan also raised various other changes in circumstances for the circuit court's consideration.  Further, Jan reiterated that Kim was in a "marriage-type relationship" with a doctor and that her overall financial situation had improved since the time of the final hearing. Kim testified and disputed these notions.

¶11    Contrary to Jan's argument, the circuit court determined that whether a substantial change in circumstances had occurred justifying the termination or modification of Jan's maintenance obligation should be measured from the June 2020 stipulation and order.  The court further found that based upon Jan's stated monthly income of $5,832 and Kim's monthly income of $2,033.33, there was an equal division of the parties' disposable income with maintenance set at $1,800 per month.  The court therefore found there was no substantial change in circumstances and denied Jan's motion.  Jan now appeals.

**DISCUSSION**

¶12    An award of maintenance may be modified only upon a finding of a substantial change in circumstances.  WIS. STAT. § 767.59(1f)(a) (2019-20).[2]  A

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

substantial change in circumstances is one in which it would be unjust or inequitable to strictly hold either party to the judgment. ***Rosplock v. Rosplock***, 217 Wis. 2d 22, 33, 577 N.W.2d 32 (Ct. App. 1998) (citation omitted).

¶13    Whether there has been a substantial change of circumstances is a mixed question of law and fact. ***Id.*** at 32-33. The circuit court's factual findings regarding the "before" and "after" circumstances and whether a change has occurred will not be disturbed unless clearly erroneous. ***Id.*** at 33. However, whether the change is substantial is a question of law that we review de novo. ***Id.*** Because the court's legal determination is intertwined with its factual findings, we nevertheless give weight to the court's decision. ***Id.***

¶14    Jan argues that the circuit court erred by denying his motion to terminate or substantially reduce his maintenance payments to Kim for several reasons. Jan first argues that whether a substantial change in circumstances occurred should be measured from the parties' divorce judgment and not from the order resulting from the parties' June 2020 stipulation. The original divorce judgment stated that a reduction in Jan's income of twenty-five percent or more would constitute a substantial change in circumstances. According to Jan, his income at the time of the judgment was $94,000 per year. He contends that his current monthly income of $5,832 is more than twenty-five percent less than he was earning at the time of the divorce, and, therefore, the court erred in finding no substantial change in circumstances.

¶15    Jan's argument is incorrect and ignores multiple stipulations and orders since the divorce judgment. "[T]he appropriate comparison regarding any change in the parties' financial circumstances is to the set of facts that existed at the time of the most recent maintenance order." *See **Kenyon v. Kenyon***, 2004 WI

147, ¶21, 277 Wis. 2d 47, 690 N.W.2d 251. Thus, when determining whether to modify maintenance, a court "should compare the facts regarding the parties' current financial status with those surrounding the previous order in determining whether the movant has established the requisite substantial change in circumstances, such that modification of the maintenance award is warranted." *Id.*, ¶27.

¶16    Accordingly, the circuit court correctly determined that the existence of a substantial change in circumstances should be measured from the last order affecting maintenance—specifically, the order adopting the parties' June 2020 stipulation. In that stipulation, the parties agreed that Jan's maintenance would be waived due to his unemployment. Jan's maintenance obligation, however, was set to resume at its prior level of $1,800 monthly at the earlier of Jan's reemployment or October 1, 2020. Jan acknowledged this in an affidavit filed in support of his motion to terminate maintenance. The prior level of monthly maintenance at $1,800 referenced in the June 2020 stipulation was based upon the parties' July 29, 2019 stipulation, which set Jan's obligation at $1,800 per month beginning August 1, 2020. Under these circumstances, there was no basis for the court to look at the divorce judgment to determine if there was a substantial change in circumstances justifying a modification of maintenance.

¶17    Further, the circuit court properly concluded that there had been no substantial change in circumstances warranting modification since the June 2020 stipulation and order. In the stipulation, Jan represented that he had no income due to his unemployment, but he nevertheless agreed that maintenance would resume at $1,800 per month either when he became reemployed or on October 1, 2020. On October 26, 2020, Jan filed a FDS that showed gross monthly income in the amount of $5,832. In Jan's affidavit in support of his motion to terminate

maintenance, he similarly claimed that his income was approximately $6,000 per month. The court therefore implicitly found that no reduction in Jan's income or earning capacity had occurred since the June 2020 order. The court rejected Jan's argument that Kim's earning capacity had changed, finding instead that Kim's income and financial situation were the same as at the time of its June 2020 order. Kim had the same living arrangement, the same job title and employer, and similar income, and she was not engaged to be married. On these facts, the court properly determined that Jan failed to show a substantial change in circumstances warranting a termination of his maintenance obligation.

¶18     Jan next argues that the circuit court failed to consider all the factors under WIS. STAT. § 767.56 in rejecting his motion to terminate maintenance. Kim correctly argues, however, that before a court can consider the factors under § 767.56, the court must determine if there was a substantial change in circumstances justifying a modification or termination of maintenance. *See Rosplock*, 217 Wis. 2d at 32-37. Here, the court determined that no substantial change in circumstances justifying the requested relief had occurred. Because the court concluded there was no substantial change in circumstances, there was no need for the court to consider the statutory factors.

¶19     Jan next argues that there was no basis for the circuit court to determine that the parties were in the essentially the same position as they were at the time of the divorce judgment. Jan's argument, however, is based on measuring the change in circumstances from the divorce judgment and not from the most recent June 2020 order, as required by law. *See Kenyon*, 277 Wis. 2d 47, ¶21. According to Jan's FDS and affidavit filed in October 2020, Jan's monthly income at that time was between $5,832 and $6,000, while Kim's circumstances remained unchanged. After considering the parties' income, the court determined that the

previously stipulated monthly maintenance award of $1,800 provided for a 50/50 split of the parties' income. This conclusion was consistent with what the law provides as a starting point for a maintenance award in a long-term marriage, such as here. *See **Finley v. Finley***, 2002 WI App 144, ¶19, 256 Wis. 2d 508, 648 N.W.2d 536.

¶20 In addition, Jan argues the circuit court prevented him from adequately presenting his case and permitted Kim's counsel to provide false and misleading information. Specifically, Jan contends that the court erred in: permitting Kim's attorney to make disparaging remarks about him; failing to sanction Kim's attorney for a false affidavit; allowing lies; intimidating and discriminating against him during the hearing; and failing to allow him to prepare for cross-examination. We decline to address these arguments because they are underdeveloped. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). Jan fails to show how the court relied upon any improper remarks or information provided by Kim's attorney, or how the court prevented him from making his case.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.