IN RE the MARRIAGE OF:

Kimberly A. CASHIN n/k/a Kimberly A. Converse, Petitioner-Respondent-Cross-Appellant,

v.

William G. CASHIN, Respondent-Appellant-Cross-Respondent.

Court of Appeals

*No. 03–1010. Submitted on briefs January 13, 2004.—Decided April 29, 2004.*

2004 WI App 92

(Also reported in 681 N.W.2d 255.)

On behalf of the respondent-appellant-cross-respondent, the cause was submitted on the briefs of *Richard J. Auerbach, Auerbach & Porter, S.C.,* Madison.

On behalf of the petitioner-respondent-cross-appellant, the cause was submitted on the brief of *Jack C. Hoag*, Janesville.

Before Deininger, P.J., Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. William Cashin appeals the trial court's order construing the judgment of divorce from Kimberly Cashin to require him to pay maintenance in an amount equal to 25% of his gross income rather than 25% of his salary, as well as the order denying his motion for reconsideration. He contends the judgment of divorce was unambiguous and therefore not subject to construction by the trial court. We conclude the divorce judgment was ambiguous, the trial court had the authority to clarify what it had intended, and its construction was reasonable. We also conclude the trial court had the authority to assess interest on the arrears that were due under the judgment as construed by the court. We do not address the amount of the interest imposed because William did not raise that issue in the trial court and the record necessary to our review is not developed. Accordingly, we affirm.

¶ 2. Kimberly cross-appeals, contending that the trial court erroneously exercised its discretion in denying her motion to extend maintenance. We disagree and conclude the court properly exercised its discretion. We therefore affirm on the cross-appeal.

## I. APPEAL

### A. Background

¶ 3. William and Kimberly were divorced following a trial before the Honorable Judge Richard T. Werner. At the close of the trial, Judge Werner rendered

an oral decision that was later reduced to written findings of fact, conclusions of law, and a judgment entered on December 18, 1996.

¶ 4. At the time of the divorce, the parties had been married nineteen-and-one-half years and had two minor children, then fifteen and fourteen. Based on the parties' stipulation of physical placement, the court found that William was a shared-time payer under WIS. ADMIN. CODE § HSS 80 and applied that formula in determining the amount of child support he was to pay Kimberly. The court also ordered that William pay Kimberly maintenance. The paragraphs of the judgment on child support and maintenance provided:

> 30(a) Consistent with the provisions of Wis. Admin. Section HSS 80, the Respondent shall pay the sum of $348 per month for the support of the minor children of the parties. When Matthew P. Cashin reaches the age of eighteen years of age or is earlier emancipated or reaches the age of nineteen years of age, if he is pursuing an accredited course of instruction leading to the acquisition of a high school diploma or its equivalent, the sum which the Respondent shall pay for child support shall be adjusted pursuant to provisions of Wis. Admin. Code Chapter HSS 80. Thereafter, Respondent shall continue to pay for the support of the remaining child of the parties until said child reaches the age of eighteen years of age or is earlier emancipated, or reaches the age of nineteen years of age if he is pursuing an accredited course of instruction leading to the acquisition of a high school diploma or its equivalent.

> (b) The Respondent shall be required to pay maintenance in a sum sufficient so that the combination of child support and maintenance shall equal 25% of his gross income. Based upon Respondent's present rate of compensation of $52,200 per year, he shall pay mainte-

761

nance in the sum of $740 per month. Such payments to continue until January 1, 2002 or earlier, upon the death of either party or the remarriage of the Petitioner. Respondent is to notify Petitioner within five (5) days of any increase in his salary. When there remains one minor child for which the Respondent pays support and the amount of said support is adjusted as set forth above, the remaining amount of 25% of the gross income of the Respondent as measured by his salary shall be classified as maintenance. Furthermore, by June 1st of each year, each of the parties shall provide the other with a copy of their income tax return for the previous year.

¶ 5. In December 2001, Kimberly moved to find William in contempt of court for the failure to make the child support and maintenance payments as ordered. Kimberly contended that paragraph 30(b) of the divorce judgment required William to pay 25% of his gross income and he had paid only 25% of his salary. William disputed this construction of the judgment, pointing to the language in the fifth sentence of paragraph 30(b), which refers to "25% of the gross income of the Respondent as measured by his salary."

¶ 6. The motion was heard by Judge Werner. He reviewed a transcript of the oral decision he had made in December 1996. He referred to the references he had made then to "gross income" and stated that he meant by that "all income." Judge Werner explained that he had specific reasons for ordering that William pay only 25% of his salary in December 1996 for child support, and those reasons were unique to that year. He had not included William's bonus for 1996 in the calculation for child support because at the time the amount was unknown; he had therefore ordered it to be divided evenly between the parties. He had not included the stock bonuses or stock incentives because those had

been received earlier that year and had been divided as assets. However, Judge Werner stated, he did not intend that those other sources of income be excluded in future years in computing the 25% that William was to pay; rather, he intended that all sources be included.

¶ 7. Considering all income William earned for the years 1997 through 2001, the court found that he was $28,718.62 in arrears on his maintenance obligation. The court imposed 12% interest on the arrearage, which was to begin to accrue on December 31 of each year for the amount in arrears for that year. The court found the total arrears plus interest accrued through November 12, 2002, was $36,889.72.

¶ 8. William moved for reconsideration and the court denied the motion. Judge Werner emphasized that his oral decision was not ambiguous, that it plainly stated that gross income was to be used in computing child support and maintenance, and that was the decision of the court in spite of how the written judgment was prepared.

## B. Discussion

### 1. Construction of the Divorce Judgment

¶ 9. William contends on appeal that the trial court had no authority to construe the written divorce judgment because the judgment clearly provided he was to pay 25% of his gross income "as measured by his salary." Kimberly responds that the judgment when read as a whole is ambiguous on the issue of what "gross income" means, and the court therefore had the authority to clarify its intent.

¶ 10. Before examining the language of the judgment, we set out the relevant case law. While a written judgment that is clear on its face is not open to construction, the trial court does have the authority to construe an ambiguous judgment to effectuate the trial court's objective. *See Washington v. Washington*, 2000 WI 47, ¶¶ 17, 19, 234 Wis. 2d 689, 611 N.W.2d 261. Such a clarification is not a modification or amendment of the judgment. *Id.*, ¶ 19.

¶ 11. In the context of construing written judgments, courts have adopted certain principles from case law construing contracts and other written instruments. *Schultz v. Schultz*, 194 Wis. 2d 799, 805, 535 N.W.2d 116 (1995). Thus, ambiguity is defined as language that is subject to two or more reasonable interpretations, either on its face or as applied to the extrinsic facts to which it refers. *Id.* at 805–06. Also, we consider the circumstances present at the time of entry, and, as with contracts, we do not consider the meaning of particular provisions of the judgment in isolation but in the context of the whole judgment. *Id.* at 805.

¶ 12. However, we have also recognized that construing a judgment presents a situation distinct from construing a contract, because in the former situation the drafter of the disputed language has the opportunity to interpret his or her own unilateral decision. *Id.* Thus, although we recognized in *Schultz* that the question whether a judgment is ambiguous presents a question of law, which we review de novo, we also decided that a deferential standard of review was appropriate once we concluded that a judgment was ambiguous. *Id.* at 808. Because the judge who drafted

764

the ambiguous language has a superior practical knowledge of its meaning, when the judge resolves an ambiguity based on his or her experience of the trial and uses a reasonable rationale, an appellate court is to affirm the clarification by the trial judge. *Id.* at 808–09.

¶ 13. We observe that there may be a factual distinction between this case and *Schultz* in that in *Schultz* we refer to the trial judge as the "drafter," *id.* at 805, while the record here shows that Judge Werner received a draft of the findings of fact, conclusions of law, and judgment from William. However, once Judge Werner signed the document and it was entered by the clerk of the circuit court, it became the judgment of the court. Neither party argues that our analysis should differ from that in *Washington* and *Schultz* solely because Judge Werner did not draft the judgment. We conclude it does not differ. This conclusion is consistent with *Jackson v. Gray*, 212 Wis. 2d 436, 441–42, 444, 569 N.W.2d 467 (Ct. App. 1997), in which we held that an unambiguous written judgment, prepared by one of the attorneys and then signed and entered by the court, clearly expressed the court's intent; we did not attach any significance to the fact that the judge did not draft it.

¶ 14. We also conclude that our standard of review is not affected by the fact that Judge Werner did not draft the judgment. We determine as a matter of law whether the judgment is clear on its face without regard to who drafted it. However, if we conclude the judgment is not clear on its face, Judge Werner, as the judge who presided at the trial and who rendered the decision that was to be expressed in the written judgment, is entitled to the deference accorded in *Schultz*.

¶ 15. We turn now to the language of the judgment at issue in this case. We do not agree with William's method of analysis, which considers only paragraph 30(b). Rather, we consider both paragraphs 30(a) and (b), because the amount of maintenance is directly related to the amount of child support in that the total is to equal "25% of his gross income." Paragraph 30(a) sets the amount of child support "[c]onsistent with the provisions of Wis. Admin. Section HSS 80" and provides for adjustment "pursuant to provisions of Wis. Admin. Code Chapter HSS 80." In December 1996, § HSS 80.02(13)(a)[1] defined "gross income" as "all income considered federal gross income under 26 C.F.R. 1.61–1" and that federal regulation defined "gross income" as "all income from whatever source derived, unless excluded by law." It is reasonable to construe "gross income" to have the same meaning in computing child support and in computing maintenance, since the total under the first sentence of paragraph 30(b) is to be "25% of William's gross income." This makes it reasonable to apply the definition of "gross income" in the administrative code to paragraph 30(b).

¶ 16. However, the sentence on which William relies in paragraph 30(b) specifies that salary is the measure of "gross income" for the maintenance portion of the payment when child support is reduced because there is only one minor child. In addition, the amount set for child support and maintenance at the time of the judgment equals 25% of his "present rate of compensation of $52,200," not 25% of all his income for 1996. While these portions of the judgment support William's

---

[1] HSS 80 has since been renumbered to DWD 40, and the definition of "gross income" in § DWD 40.02(13) has been modified, but the changes do not affect this analysis. William's bonuses and investment income continue to be "gross income."

766

position that "gross income" means only his salary for all years after 1996, his position requires that we ignore the reference to § HSS 80 in paragraph 30(a).

## WIS. ADMIN. CODE

¶ 17. William's position also overlooks paragraph 13, which addresses his bonus for 1996. Under that provision, he and Kimberly each received one-half of William's Christmas bonus for 1996 after taxes. The division of the 1996 bonus in this way is consistent with basing the child support and maintenance at the time of the judgment only on William's salary for 1996. Plainly, the court decided not to exclude William's bonus for 1996 when considering his obligations to Kimberly. This raises the question of what the court intended with respect to the bonuses in future years. The reference to WIS. ADMIN. CODE § HSS 80 in paragraph 30(a) suggests they are to be considered in computing William's child support and maintenance obligations in future years, but, under the fifth sentence of paragraph 30(b), they would be excluded, at least beginning with payments made after child support is reduced because there is only one minor child.

¶ 18. We conclude the judgment is not clear on its face with respect to the meaning of "gross income" for the years 1997 and after. We recognize that the lack of clarity on this point may not fit neatly into the definition of ambiguity that courts have thus far used in this context: "language . . . subject to two or more reasonable interpretations, either on its face or as applied to the extrinsic facts to which it refers." *Schultz,* 194 Wis. 2d at 805–06. The primary difficulty with this judgment is that there are provisions that cannot be reconciled: we must either ignore the reference to WIS. ADMIN. CODE § HSS 80 in paragraph 30(a) or ignore the

767

phrase "gross income of the Respondent as measured by his salary" in the fifth sentence of paragraph 30(b). Whether this conflict can be said to result in two reasonable constructions or, rather, should be classified in some other way is not significant in the context of construing a written judgment. In either case the judgment is not clear on its face, and in either case we are satisfied that the trial court has the authority to clarify what it intended.

¶ 19. We therefore review the trial court's construction of the judgment to determine whether it is reasonable in light of the entire record. *See Schultz*, 194 Wis. 2d at 802, 808–09. We conclude that it is.

¶ 20. As we have already stated, before construing the written judgment, Judge Werner reviewed the transcript of his oral decision, as we have done. His explanation of how he treated William's bonus for 1996 and income from stock for 1996 is supported by the record. Judge Werner specifically stated that he was dividing the estimated amount of the bonus for 1996 because the amount at that time was unknown. We do not see in the record a specific reference to the income from stock, but the record supports Judge Werner's explanation of his intent on this: in the property settlement he awarded William various stock; income from stock had in past years been reflected on the parties' tax returns; and by the time of the trial in December the income from stock for 1996 would have been received and its division already taken into account. In explaining his decision on child support and maintenance, Judge Werner refers to the total as 25% of William's "gross income," and there is no indication he intended that phrase to mean anything other than all William's income. In particular, there is no indication that he intended that in the years after 1996, only

William's salary would be considered in computing his child support and maintenance obligations even if William continued to receive bonuses and income from stock. Judge Werner also refers to WIS. ADMIN. CODE § HSS 80 with respect to computing child support and this, too, is consistent with an intent that all of William's income after 1996 should be considered in computing his child support and maintenance obligations.

¶ 21. Because Judge Werner's determination of his intent has a firm basis in the record and is supported by a reasoned rationale, we conclude that under the reasoning of *Schultz* and *Washington*, it is a permissible clarification and not an impermissible amendment.

¶ 22. We observe that both parties in their arguments refer to a line of cases distinct from *Washington* and *Schultz* in which the courts address discrepancies between a judge's oral decision and the written judgment. We discuss this line of cases in the interest of addressing all of the parties' arguments. *State v. Perry*, 136 Wis. 2d 92, 113–15, 401 N.W.2d 748 (1987), holds that when an oral sentence clearly contradicts an unambiguous written judgment, the oral sentence controls. However, when the oral pronouncement is ambiguous and the written judgment is clear, the latter controls, and this rule applies in both civil and criminal cases. *Jackson*, 212 Wis. 2d at 443–44. The principle underlying both these rules is that the intent of the trial judge governs. *State v. Brown*, 150 Wis. 2d 636, 640–42, 443 N.W.2d 19 (Ct. App. 1989); *State v. Lipke*, 186 Wis. 2d 358, 364–65, 521 N.W.2d 444 (Ct. App. 1994).

¶ 23. William argues that *Jackson* supports his position and that the rule in *Perry* is unique to criminal cases. Because we have already concluded that the written judgment is not clear on its face, *Jackson* does not support his position; there the written judgment controlled because it was not ambiguous and the oral decision was. For the same reason—the lack of clarity in this written judgment—we need not decide whether the rule in *Perry* applies in civil cases, and, if so, how to reconcile *Perry* with *Washington* and *Schultz*. We recognize that the *Perry/Jackson/Brown/Lipke* line of cases might provide an alternative analysis to that which we have used from *Washington* and *Schultz*. However, we are satisfied such an analysis would not alter the result. Because this written judgment is not clear on its face, and because the oral decision does not give any indication that in the years after 1996 only William's salary was to be considered in computing his child support and maintenance obligations, we would also affirm the trial court under this alternative analysis.

2. Interest on Maintenance

¶ 24. William contends the court erred in imposing interest at 12% on the maintenance arrearage beginning December 31 of the year in which maintenance was due but not paid because, he asserts, there is no statutory authorization for interest on maintenance arrearages. He points out that Wɪs. Sᴛᴀᴛ. §§ 767.25(6) and 767.261 (2001–02)[2] provide for simple interest at the rate of 1% per month on any arrearage equal to or

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

770

greater than the amount of child support due in one month, but there is no analogous provision for maintenance.[3]

¶ 25. William did not make this argument in the trial court. In her brief in support of her motion, Kimberly asked for 12% interest on the maintenance arrearages but did not specify a statutory basis. William did not respond in his brief to this request, and the topic did not arise at oral argument. Understandably, then, the court ordered 12% interest on the maintenance arrears as requested by Kimberly, without addressing its authority to do so. In both his brief in support of his motion for reconsideration and at oral argument, William's only references to interest were in the context of his equitable estoppel argument. He asserted that the court's imposition of interest showed he suffered a detriment from relying on Kimberly's failure to bring her motion sooner. Understandably, then, when the court denied William's motion, confirming its earlier analysis according to which there was an arrearage, the court did not address the question of interest.

¶ 26. When a party does not raise an issue in the trial court, the party loses the right to raise that issue on appeal. *Schwittay v. Sheboygan Falls Mut. Ins. Co.*, 2001 WI App 140, ¶ 16 n.3, 246 Wis. 2d 385, 630 N.W.2d 772. However, we have the discretion to decide an issue that has been waived, and we generally *do so only if*

---

[3] The parties refer to 1% interest on "family support" under WIS. STAT. § 767.261. This section authorizes the court to order "family support" as a substitute for child support and maintenance. However, the 1% interest specified there is on "any amount in arrears that is equal to or greater than the child support due in one month," exactly as provided in WIS. STAT. § 767.25(6).

there are no factual disputes, the parties have briefed the issue, and it raises only a question of law. *Estate of Hegarty v. Beauchaine*, 2001 WI App 300, ¶¶ 12–13, 249 Wis. 2d 142, 638 N.W.2d 355. We generally do not do so when the issue involves questions of fact not brought to the attention of the trial court, *Evjen v. Evjen*, 171 Wis. 2d 677, 688, 492 N.W.2d 361 (Ct. App. 1992), or an error that could have been corrected had it been brought to the trial court's attention. *See Town of Menasha v. City of Menasha*, 170 Wis. 2d 181, 196, 488 N.W.2d 104 (Ct. App. 1992).

¶ 27. We choose to address the issue whether the court had the authority to order interest on the maintenance arrears. This is a question of law that has been fully briefed, and the necessary record is complete. We conclude the court did have the authority to order interest on the maintenance arrears under WIS. STAT. § 767.01(1).[4]

¶ 28. WISCONSIN STAT. § 767.01(1) provides that circuit courts "have jurisdiction of all actions affecting the family and have authority to do all acts and things necessary and proper in such actions and to carry their orders and judgments into execution as prescribed in this chapter." In *Washington*, the supreme court relied on this provision to conclude that, notwithstanding the prohibition in WIS. STAT. § 767.32(1)(a) against revisions or modifications of property divisions, a circuit court had the authority to "effectuate its orders and do justice." *Washington*, 234 Wis. 2d 689, ¶ 15. That authority included, the supreme court held, the authority to decide how to allocate the appreciation and

---

[4] Kimberly suggests other statutory bases for the court's authority, but we do not address them because the arguments are not well developed and would not affect the result in this case.

772

interest on the pension from the divorce until the date of division, an issue that had not been addressed in the judgment. *Id.*, ¶ 35. The supreme court's reasoning was that, if the circuit court did not have this authority, the circuit court's objective—an equal division of property —could be thwarted. *Id.*, ¶ 28.

¶ 29. The supreme court also relied on WIS. STAT. § 767.01(1) in *Rotter v. Rotter*, 80 Wis. 2d 56, 257 N.W.2d 861 (1977). There the divorce judgment ordered a husband to cooperate in converting health insurance coverage for his wife. *Id.* at 57. The wife was hospitalized before conversion occurred and moved to have the husband pay the medical expenses. *Id.* at 58. The trial court found that the husband had not met his duty under the divorce judgment and ordered that he pay those medical expenses that would have been covered by insurance. *Id.* at 58, 61. The supreme court concluded that the trial court had the authority to enter this order under § 767.01(1) (then numbered WIS. STAT. § 247.01) because the order was "necessary to give effect to the divorce judgment and to protect the [wife] from the loss occasioned by the inaction of the [husband]. Absent such authority, under the facts of this case, paragraph 10 of the divorce judgment would be of no effect." *Id.* at 63. In support of its conclusion, the supreme court cited to *Laing v. Williams*, 135 Wis. 253, 257 (1908), and to a treatise, both of which established that, in family court matters, trial courts have "inherent powers, independent of contempt proceedings, to remedy injuries arising from violations or noncompliance with their orders or judgments." *Rotter*, 80 Wis. 2d at 63.

¶ 30. The reasoning of the court in *Washington* and *Rotter* applies in this case. The trial court decided that William should pay a combined amount of child

support and maintenance equaling 25% of his gross income for a specified period of time. William did not pay 25% of his gross income as the trial court intended. In the absence of interest on the unpaid amounts, Kimberly will not receive the amount from William that the court intended that he pay.

¶ 31. We are not persuaded that the provisions of WIS. STAT. §§ 767.25(6) and 767.261 regarding a fixed amount of interest on child support show a legislative intent to limit the trial court's authority to consider imposing interest on unpaid maintenance under WIS. STAT. § 767.01(1). The interest under the two former sections is fixed and mandatory in all cases; it reveals a legislative purpose to have a uniform and serious consequence for any child support arrearage as defined in those sections. It is not reasonable to construe those two statutes as limiting the authority a trial court would otherwise have to consider imposing interest on unpaid maintenance arrears.

¶ 32. We emphasize that, although a trial court has authority under WIS. STAT. § 767.01(1) to impose interest on maintenance arrearages, the trial court decides, in its discretion, whether to exercise that authority. If the court does decide to impose interest, it is also under the trial court's discretion to determine the amount to impose.

¶ 33. In this case, because the trial court was never asked to state the basis for its authority to award interest, it did not articulate that it was exercising its discretion in deciding to impose interest and in choosing to impose 12%. However, the record shows that, in denying William's motion for reconsideration, the court considered and rejected William's arguments that it was

774

not fair to order him to pay the arrears plus interest. The court's comments make clear that it viewed the oral decision as unambiguous, that William knew or should have known that he was to pay child support and maintenance for the years after 1996 based on all his income, and that it was not unfair to William to order him to pay the arrearage plus interest. We are therefore satisfied that the court took into account appropriate factors in deciding to impose interest.

¶ 34. However, we cannot tell from the record whether the trial court would have chosen to award interest at 12% had it understood that its authority derived from Wis. Stat. § 767.01(1) and that the proper purpose of interest under this statute is to effectuate its judgment decision and avoid a loss to Kimberly because of William's failure to pay. William does not argue on appeal that, if the court has the authority to order interest, 12% is unreasonably high; nor, as we have stated above, did he make that argument in the trial court. Although we have chosen to address the issue of the trial court's authority to award interest even though William waived the right to make that argument on appeal, we decline to take the same approach with respect to the amount of interest. This is not a question of law, and, because William did not raise this issue in the trial court, there is no record on which we can decide this issue. This is precisely the type of situation in which we generally refrain from reversing and remanding to the trial court to consider an issue not previously presented to it. *See Evjen*, 171 Wis. 2d at 688. We follow that approach here.

¶ 35. We conclude the trial court had the authority under Wis. Stat. § 767.01(1) to impose interest on the maintenance arrearage in this case. However, we do not decide whether imposing interest in the amount of

12% is a proper exercise of the trial court's authority, nor do we remand for the court to take up that issue. Instead, we affirm the court's decision to impose 12% interest on the basis of waiver.

## II. CROSS-APPEAL

### A. Background

¶ 36. The trial court's findings in the divorce judgment regarding maintenance included the following. Kimberly's gross monthly earnings were $1560 as an administrative assistant and William's were $4350. Kimberly was thirty-nine, in good health, had a high school diploma and fifteen credits of post-high school education. William was forty-two, in good health and had earned a college degree during the marriage, funded by his parents. Kimberly had been out of the job market for a period of time during the marriage by agreement of the parties and it was not likely that she would be able to equal William's earnings in the future. She had assisted William in his career advancement. Kimberly had job skills and an ability to reach a financial situation on her own reasonably comparable to that which existed during the marriage, and with further schooling she could increase her earning capacity, but she would have to maintain her work at the present or a higher level to maintain her economic situation. She was in need of maintenance and William had the ability to pay it.

¶ 37. As noted above, the court ordered maintenance for a period of five years, until January 1, 2002, with the amount of maintenance increasing as child support decreased and then stopped. In its oral decision, the court provided this additional explanation relevant to the five-year term. Because of Kimberly's

relatively young age, permanent maintenance was not appropriate. However, although she would be able to become self-supporting at a reasonable standard of living, that might not be for at least five years. Kimberly had expressed a desire to go to school either so that she could be employed in her own business or be employed in a management position. There was evidence school would increase her earning capacity, and schooling would most likely be necessary for her to obtain a decent standard of living. Although she had not carried her burden by providing a reasonable time period needed for this goal, it was obvious that would take some time. The amount she received in the property division would assist her in pursuing her immediate goals and allow her to be somewhat self-supporting in the relatively near future. The court determined that the five-year term of maintenance at the level the court ordered, increasing as child support decreased and then stopped, was sufficient for Kimberly to achieve what she needed to and was also within William's ability to pay.

¶ 38. In December 2001, Kimberly moved to extend maintenance for an additional eight years. In support of her motion, Kimberly testified[5] that she was employed and earning $33,000. There had been problems with the children, including one being expelled from school, which had forced her to put her educational plans on hold. She had enrolled in three classes at Black Hawk Technical College since the divorce but did not complete any—she withdrew from one because of

---

[5] The motion was first heard by the family court commissioner in June 2002, and the commissioner denied the motion. For the trial court's de novo review, the parties stipulated to use of the transcript of the hearing before the commissioner as the factual basis for the court's decision.

the demands of her job and another because of the problems her children were having. She planned to enroll the following January in Madison Area Technical College in an accounting program and it would take her three to four years to complete the fifty-three credits for that program while working, at a cost of $300 for three credits. She wanted to then get a degree in accounting from the University of Wisconsin-Madison, which would take her an additional four to six years as a part-time student, while continuing her job. She would need about sixty credits at UW-Madison, at a cost of $582 for four credits. She had already cashed in her IRA and a portion of her retirement to live and to get living room furniture, which she did not have after the divorce.

¶ 39. The trial court denied Kimberly's motion to extend maintenance. The court reasoned that her current earnings were significantly higher than at the time of the divorce, indeed, higher than that which her expert at the divorce hearing had opined her earning capacity would be twenty years after the divorce. The court acknowledged that she had not had the opportunity to complete her educational program and that difficulties with the children had affected her ability to get as far as she had planned in her program. However, the court did not consider those factors to be appropriate reasons to extend maintenance, given the increase in her income.

### B. Discussion

¶ 40. On her cross-appeal, Kimberly argues that the trial court erred in refusing to extend maintenance because the purposes of the court's initial award of maintenance have not been met for these rea-

sons: (1) she was forced to put her education plans on hold because of problems with the children; (2) she had been forced to use substantial sums of money to make repairs on her fifteen-year-old home; and (3) William had failed to pay her the child support and maintenance the court had intended her to have.

■

¶ 41. In order to seek a modification of a maintenance award, the party seeking the modification must demonstrate that there has been a substantial change in circumstances warranting the proposed modification. *Rohde-Giovanni v. Baumgart*, 2004 WI 27, ¶ 30, 269 Wis. 2d 598, 676 N.W.2d 452. As the supreme court explained in this recent decision, the correct test on a motion to modify maintenance "should consider fairness to both of the parties under all the circumstances." *Id.,* ¶ 32. The court is to begin with a consideration of facts as found at the time the judgment was entered and then consider changes in the parties' circumstances since that time. *Id.,* ¶¶ 33–34. In the context of a motion for modification of a limited-term maintenance agreement, the court should also consider the purposes of awarding maintenance for that limited term. *See Fobes v. Fobes*, 124 Wis. 2d 72, 81, 368 N.W.2d 643 (1985) (affirming modification of limited-term maintenance to permanent maintenance because the payee was unable to achieve the goal contemplated); *Murray v. Murray*, 231 Wis. 2d 71, 81, 604 N.W.2d 912 (Ct. App. 1999) (reversing extension of limited term because the purposes had been met); *Rosplock v. Rosplock*, 217 Wis. 2d 22, 34, 577 N.W.2d 32 (Ct. App. 1998) (stating that party seeking reduction or termination of limited-term maintenance has the burden of showing the purposes have been satisfied).

¶ 42. Decisions of this court have not been entirely consistent in the standard of review we use regarding

779

motions to modify maintenance. Many cases have used a two-part standard, distinguishing between the issue of substantial change in circumstances and the issue of whether and how to modify maintenance. Under this approach, we have treated the issue of a substantial change of circumstances as a mixed question of law and fact, accepting the trial court's findings of fact unless they are clearly erroneous and reviewing de novo whether those facts constitute a substantial change. *Murray,* 231 Wis. 2d at 77; *Rosplock,* 217 Wis. 2d at 32–33. We have considered the question of whether and how to modify if a substantial change of circumstances exists to be a matter for the trial court's discretion. *Murray,* 231 Wis. 2d at 77–78. We affirm discretionary decisions if the record shows the circuit court employed a process of reasoning in which it considered the facts and applied the correct law to reach a logical result. *Id.* at 78.

¶ 43. However, in other cases, we have not mentioned this two-part standard and have reviewed the entire decision of the trial court under the standard for discretionary decisions. *See, e.g., Wettstaedt v. Wettstaedt,* 2001 WI App 94, ¶ 6, 242 Wis. 2d 709, 625 N.W.2d 900; *Johnson v. Johnson,* 217 Wis. 2d 124, 127, 576 N.W.2d 585 (Ct. App. 1998). In *Rohde-Giovanni,* the supreme court did not employ the two-step standard in reviewing that trial court's decision on maintenance modification even though we had done so in our decision.[6] Instead, the supreme court stated:

> We now consider whether there was sufficient evidence from which the circuit court could reasonably find a substantial change in the parties' circumstances

---

[6] *Rohde-Giovanni v. Baumgart,* 2003 WI App 136, ¶ 5, 266 Wis. 2d 339, 667 N.W.2d 718.

that would justify the termination of maintenance after two more years. Circuit courts exercise their discretion when determining the amount and duration of maintenance. We will not disturb the circuit court's decision regarding maintenance unless the award represents an erroneous exercise of discretion.

*Rohde-Giovanni*, 676 N.W.2d 452, ¶ 17 (citations omitted). The supreme court then set forth the standard of review for discretionary decisions. *Id.*, ¶¶ 18–19. The supreme court's analysis of the trial court's decision and its conclusion that the court "did not erroneously exercise its discretion in modifying the maintenance award," *id.*, ¶ 39, indicate that it viewed the issue of substantial change of circumstances to be part of the court's discretionary decision to modify maintenance and not a separate issue involving a question of law subject to de novo review: "We conclude that, in the present case, the circuit court could reasonably find that there had been a substantial change in the parties' circumstances." *Id.*, ¶ 39.

¶ 44. When a decision of this court and the supreme court are inconsistent, we are bound by the decision of the supreme court. *See Ambrose v. Continental Ins. Co.*, 208 Wis. 2d 346, 354, 560 N.W.2d 309 (Ct. App. 1997). We conclude we should follow the supreme court's decision in *Rohde-Giovanni* and review a trial court's decision to deny an extension of maintenance as a discretionary decision, including the decision whether there is a substantial change in circumstances. Under this standard of review, we affirm the trial court's decision on whether there is a substantial change in circumstances if there is a reasonable basis in the record for the trial court's decision. *Rohde-Giovanni*, 676 N.W.2d 452, ¶¶ 17–18.

¶ 45. We conclude the trial court here properly exercised its discretion in denying Kimberly's motion. It ·considered the facts it had found at the time of the divorce, considered the purposes for awarding maintenance for five years, and reasonably decided the purposes had been fulfilled because Kimberly's income had increased substantially. None of the three reasons Kimberly advances shows an erroneous exercise of discretion.

¶ 46. First, the record does not show that the court set the term of maintenance based on the time needed to complete a particular educational program. Indeed, as the court in its original decision noted, Kimberly did not present evidence on that point. The period of five years selected by the court was intended to give Kimberly the opportunity to increase her income —through education if she chose. As it turned out, to her credit she substantially increased her income without additional education. Thus, the court's purpose in awarding maintenance for five years was not thwarted but rather achieved.

¶ 47. As for the need to make repairs to the house, Kimberly does not point to any testimony on her need to expend money for this purpose, or the amount of money she had to expend, nor did she argue this in her briefs or in oral argument in the trial court. Accordingly, we do not consider this as a ground for reversal of the trial court's decision. *See Schwittay*, 246 Wis. 2d 385, ¶ 16 n.3 (we do not consider arguments not properly raised in the trial court).

¶ 48. Finally, William's failure to pay the amount of child support and maintenance the court intended him to pay is not a ground to extend maintenance. That issue was addressed by the court as a separate matter, was resolved favorably to Kimberly, and we

have affirmed that decision on William's appeal. Kimberly does not explain why she is entitled to an extension of maintenance given this result.

¶ 49. Accordingly, we conclude the trial court properly exercised its discretion in denying Kimberly's motion to extend maintenance. We therefore affirm on the cross-appeal.

*By the Court.*—Orders affirmed.