PER CURIAM.
¶1 Paul Sacia appeals the judgment of divorce from his former wife, Dana Sacia. Paul argues that the circuit court erroneously exercised its discretion by awarding Paul insufficient maintenance at the time of the divorce. We reject this argument and affirm the judgment.
¶2 Paul also appeals a post-judgment order terminating his maintenance. He argues that the circuit court unreasonably refused to grant him a second continuance to conduct discovery on Dana's underlying post-judgment motion. He also argues that the court erred in concluding that there was a substantial change in circumstances that justified terminating his maintenance. We reject these arguments and affirm the order.[1]
Background
¶3 Paul and Dana married in 1999 and divorced in 2016 when both were in their 40s. It is undisputed that, during the latter part of their marriage, they both worked for, and derived most of their income from, a business that Dana founded in 2008.
¶4 Paul states, and Dana does not dispute, that the net income for the business during the years 2009 to 2015 was as follows:
?
Thus, the business's net income hit a peak in 2012 and then declined steeply in 2014 and 2015.
¶5 According to Paul, he worked full time for the business and, after Dana filed for divorce in 2014, she prevented him from continuing to work there. For purposes here, we take Paul's factual assertions on this topic as true.
¶6 At the time of the divorce in 2016, the circuit court found that Dana's annual income from the business decreased to $225,000 and that Paul had an annual earning capacity of $85,000. The court awarded Paul limited-term maintenance for a four-year term in the amount of $4,000 per month.
¶7 About one year after the divorce, Dana moved to reduce maintenance, alleging that her business income had decreased further and that it would continue to decrease going forward. The circuit court concluded that there was a substantial change in circumstances that justified terminating Paul's maintenance.
¶8 As noted, Paul appeals both the divorce judgment and the post-judgment order terminating maintenance.
Discussion
A. Divorce Judgment-The Initial Award of Maintenance
¶9 We begin with Paul's challenge to the maintenance awarded at the time of the divorce. Paul makes two arguments: first, that the circuit court was required to find that he was "shirking" as a precondition to looking to his earning capacity, rather than his actual income, in determining maintenance; and, second, that the circuit court erred as a factual matter in determining that his earning capacity was $85,000. We reject both arguments.[2]
1. Paul's "Shirking" Argument
¶10 Paul assumes that a "shirking" finding is a precondition to using his earning capacity, rather than his actual income, in determining maintenance, and he takes the position that the circuit court made no such finding. We are not persuaded.
¶11 "Shirking" is a term that some might read as requiring proof of intent to avoid a support obligation. However, case law explains that such intent is not required. Rather, what is required is that a party voluntarily earn less than that party reasonably could earn under the circumstances. See Scheuer v. Scheuer , 2006 WI App 38, ¶ 11, 290 Wis. 2d 250, 711 N.W.2d 698 ; Van Offeren v. Van Offeren , 173 Wis. 2d 482, 492, 496-97, 496 N.W.2d 660 (Ct. App. 1992). Notably, an express finding of "shirking" is not required. See Scheuer , 290 Wis. 2d 250, ¶ 11.
¶12 Here, the circuit court's express findings, taken as a whole, plainly carried with them the implicit finding that Paul was shirking, that is, that he was voluntarily and unreasonably earning less than he had the capacity to earn. In summarizing its findings on Paul's earning capacity, the court explained:
He's certainly a talented person, he has a plan, he has experience in this outfitting, knows something about-sounds like he's looked into farming, he knows about construction trades, he's done it before, and he knows how to set up building homes, seems very capable so I see no reason why he can't-and he helped, as he testified to, significantly in building up [Dana's] business, even if he-sometimes he limited what he said but other times he said he did quite a bit and he did do the payroll and made the bank deposits. He didn't say he did the taxes, but he certainly knew how the business operated and assisted and actually said that she consulted him with strategic business decisions. So he does know how to operate a business successfully and has that earning capacity. And I think the statement that he could make up to $85,000 a year is certainly available to him. I'll impute that income that he could do that between his abilities, his work experience, his plans, and if he just did some investing with some of his property that's being awarded he could easily earn that.
Taken as a whole, the findings plainly imply a finding that, given Paul's skills and experience, he could earn $85,000 in any number of ways, if only he would put forth the effort.
¶13 Further, Paul's only argument that he was not shirking is an undeveloped contention that his failure to earn more was not voluntary because, as noted in our background section, Dana prevented him from working at her business after she filed for divorce in December 2014. However, this fact does not explain why, at the time of the divorce trial approximately 16 months later, Paul's failure to earn at his capacity was involuntary. We note that Paul does not direct our attention to evidence indicating that he made progress with respect to earnings during that 16-month period.
2. Whether the $85,000 Earning Capacity Finding Was Clearly Erroneous
¶14 We turn to Paul's argument that the $85,000 earning capacity finding is clearly erroneous. Paul does not make a separate, developed argument that, even if the $85,000 earning capacity finding is correct, the monthly maintenance amount was still too low.
¶15 As Paul acknowledges, we will not set aside circuit court factual findings unless those findings are clearly erroneous, that is, unless they are against the great weight and clear preponderance of the evidence. See Phelps v. Physicians Ins. Co. of Wis. , 2009 WI 74, ¶ 55, 319 Wis. 2d 1, 768 N.W.2d 615. As we now explain, the court's earning capacity finding was not clearly erroneous.
¶16 Paul argues that the court erred by adopting the $85,000 figure from a nearly identical figure shown in a business plan that Paul submitted showing how he planned to earn income going forward. Paul argues that there are multiple reasons why simply adopting his business plan figure was against the great weight and clear preponderance of the evidence.
¶17 Paul's business plan argument fails because the circuit court did not simply adopt Paul's business plan figure. Rather, as the portion of the circuit court's reasoning that we quote above demonstrates, the court based the $85,000 earning capacity finding on additional circumstances, including Paul's skills and his business experience.
¶18 Paul does not dispute that there was supporting evidence showing that he had the skills and experience that the circuit court attributed to him. On the contrary, Paul's briefing reflects his agreement that there was such evidence. For example, Paul points to evidence that he previously owned a construction company and that, when he later worked for Dana's business, he was "in charge of payroll, banking, [and] tax-related matters." Paul also states that "[i]t is not disputed that Paul has experience in home construction [and] remodeling dilapidated rental property."
¶19 Paul argues, however, that the record fails to disclose how his experience translates into dollar amounts. Paul points out that Dana failed to retain a vocational expert to assess his earning capacity. Paul cites no authority, however, for the proposition that earning capacity must be proven with precision or that expert testimony is required to prove earning capacity under the circumstances here.
¶20 Paul may mean to argue that the circuit court failed to take into account Paul's health issues relating to a neck surgery. We reject any such argument. The court made express reference to these neck-related issues but gave them little weight based on testimony by Paul that his physician had lifted any specific limitations or restrictions on Paul's activities.
B. Post-Judgment Order-Termination of Maintenance
¶21 We turn to Paul's challenge to the post-judgment order terminating maintenance. Paul argues (1) that the circuit court unreasonably refused to grant him a second continuance to conduct discovery relating to allegations in Dana's post-judgment motion to modify maintenance, and (2) that the court misused its discretion when determining that there was a substantial change in circumstances that justified terminating maintenance. We reject both arguments.
1. Continuance
¶22 A continuance is not a matter of right. Rechsteiner v. Hazelden , 2008 WI 97, ¶ 92, 313 Wis. 2d 542, 753 N.W.2d 496. The decision to deny a continuance is within the circuit court's discretion. Id. Here, for the reasons that follow, Paul fails to persuade us that the court erroneously exercised its discretion to deny a continuance.
¶23 The circuit court granted Paul a continuance of more than two months, from May 11 to July 17, 2017, so that Paul's then newly retained attorney would have time to familiarize himself with the file, to obtain transcripts from the divorce trial, and to conduct discovery. Paul argues that the court erred when it refused to grant Paul's two requests for a second continuance. We are not persuaded.
a. The First of Paul's Two Requests for a Second Continuance
¶24 Paul made the first of his two requests ten days before the scheduled July 17, 2017 hearing date. Paul argued that he needed more time for discovery and, in particular, more time to depose Dana and her accountant due to scheduling issues during the two weeks leading up to the July 17 hearing. In denying Paul's request, the circuit court found that the prior two-month continuance allowed Paul sufficient time for discovery and that Paul provided no reason for not engaging in discovery sooner than two weeks before the hearing.
¶25 On appeal, Paul seemingly argues that the circuit court unreasonably expected his attorney to depose Dana and her accountant before the attorney had time to review divorce trial transcripts that were not available until June 22. Paul does not indicate whether he put this particular argument before the circuit court. Regardless, we reject the argument for the reasons we now explain.
¶26 The record shows that the circuit court granted the first continuance to July 17 based, in part, on Paul's assertion that the transcripts would not be available until late June. Further, when Paul sought and received this first continuance, he did not object that a July 17 hearing date would not leave him with enough time for discovery. Thus, Paul's receipt of the transcripts in late June was as expected and not new information justifying a second continuance.
b. The Second of Paul's Two Requests for a Second Continuance
¶27 Paul made the second of his two requests for a second continuance at the start of the July 17, 2017 hearing. Paul argued that, on the evening of July 14, Dana provided an updated financial disclosure statement that changed the focus of Dana's argument from her reduced 2016 income to her allegedly further reduced 2017 income and a continued expected decline. The updated statement indicated that Dana was earning $7,200 per month, much less than her 2016 average. Paul argued that this eleventh-hour change in the focus of Dana's argument justified a further continuance. The circuit court disagreed.
¶28 Paul repeats the same argument on appeal, asserting that Dana's updated financial disclosure statement changed the "entire focus" of her motion away from her 2016 tax return income to the lower 2017 income indicated in the updated financial disclosure statement. We disagree.
¶29 It is true that Dana attached her 2016 tax return to her maintenance modification motion. But her argument in that motion did not indicate reliance on her 2016 tax return income. On the contrary, Dana's motion allegations made clear that she expected her income to decrease significantly from 2016 to 2017 and to decrease further after 2017. The $7,200 monthly income that Dana reported in the first half of 2017 on her updated disclosure statement was consistent with her motion allegations.
¶30 Accordingly, prior to the updated disclosure statement, Paul had ample notice that the primary topic at the hearing would be Dana's current income and expected income, not her 2016 income. It follows that Paul did not justify his request for a second continuance.
2. Substantial Change in Circumstances
¶31 Paul argues that the circuit court erred by concluding that there was a substantial change in circumstances that justified terminating Paul's maintenance award. We disagree.
¶32 We begin with the applicable standards of review. To the extent that Paul challenges fact finding and credibility determinations, we defer to the circuit court. See Noble v. Noble , 2005 WI App 227, ¶ 16, 287 Wis. 2d 699, 706 N.W.2d 166. To the extent that Paul asks us to review the court's decision that the facts show a substantial change in circumstances that justify terminating maintenance, we also defer to the circuit court. Paul cites Rosplock v. Rosplock , 217 Wis. 2d 22, 33, 577 N.W.2d 32 (Ct. App. 1998), for the proposition that we review de novo whether there is a substantial change in circumstances justifying a modification of maintenance. This may have been the law at the time of Rosplock , but it appears that currently we review this issue with deference. In Cashin v. Cashin , 2004 WI App 92, 273 Wis. 2d 754, 681 N.W.2d 255, we explained that our standard of review in this context is controlled by the supreme court's decision in Rohde-Giovanni v. Baumgart , 2004 WI 27, 269 Wis. 2d 598, 676 N.W.2d 452. Specifically, in Cashin , we said that we are bound by Rohde-Giovanni to treat the circuit court's maintenance modification decisions as discretionary, including the court's decision as to whether there is a substantial change in circumstances. See Cashin , 273 Wis. 2d 754, ¶ 44. "Under this standard of review, we affirm the trial court's decision on whether there is a substantial change in circumstances if there is a reasonable basis in the record for the trial court's decision." Id.
¶33 In the paragraphs that follow, we first explain why we conclude that there is a reasonable basis in the record for the circuit court's decision here. We then address Paul's arguments to the contrary.
¶34 As discussed above, the circuit court initially awarded maintenance in May 2016 based on Dana's 2016 income of $225,000 and Paul's earning capacity of $85,000. When the court terminated maintenance approximately one year later, in 2017, the court found that, despite Dana's considerable efforts to keep her business profitable, Dana's income continued to decline to the point that Dana's 2017 income would be only $86,810. The court relied on testimony by both Dana and her accountant explaining why and how her income decreased. The court expressly credited Dana's testimony and her accountant's testimony on these topics.
¶35 As to Paul, the court found that his earning capacity remained $85,000, and there was no indication that Paul had begun earning any significant income. In addition, although we do not list them here, the court made several findings supporting the view that Paul's failure to earn this amount was still voluntary and unreasonable under the circumstances.
¶36 The circuit court noted that Dana's actual income and Paul's earning capacity had become essentially equal; the court addressed other relevant maintenance factors; and, based on its consideration of these factors, the court concluded that Dana had shown a substantial change in circumstances justifying the termination of Paul's maintenance.
¶37 Paul argues that the circuit court should not have relied on Dana's "unsubstantiated and self-reported revenue of $7,200 per month." However, it is not this court's role to second-guess the circuit court's findings as to Dana's credibility. See Noble , 287 Wis. 2d 699, ¶ 16. Further, Paul's argument ignores the fact that Dana's testimony was corroborated, at least to some extent, by her accountant's testimony and by documentary evidence.
¶38 Paul appears to argue in the alternative that, even if the court reasonably credited Dana's testimony, the court should have held maintenance open because Dana's business income might rise in the future. Paul characterizes Dana's testimony as stating that a "rebound [in her business income] could occur within a couple of years."
¶39 We reject this alternative argument for three reasons. First, Paul does not cite or discuss any case law addressing when it is appropriate to hold maintenance open. Second, Paul is pointing to testimony at the 2016 divorce trial, not the far more pertinent testimony at the 2017 post-judgment hearing. Third, Paul's characterization of Dana's testimony is not accurate. Looking at the transcript cites that Paul relies on, we see that Dana testified that her 2016 income decreased from prior years and that she saw no reason why it would increase within the following two years. Neither this testimony nor any other evidence that Paul cites supports the proposition that Dana, especially at the time of the post-divorce hearing, believed her income might rebound.
Conclusion
¶40 For the reasons stated, we affirm the divorce judgment and the post-judgment order terminating Paul's maintenance.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).

The Honorable John A. Damon presided over the divorce proceedings. The Honorable Charles V. Feltes entered the divorce judgment and presided over the post-judgment proceedings.

Paul also argues that the circuit court's decision to limit the term of maintenance to four years was a misuse of discretion. We conclude in Section B. below that, in its post-judgment order, the court properly terminated Paul's maintenance. Thus, we need not address whether the court erred in initially setting a four-year term. However, even though we affirm the post-judgment termination of maintenance, the monthly amount matters because, if the court erred by setting that amount too low, then Paul might be entitled to compensation for additional maintenance he was entitled to during the period of time that he received it.