COURT OF APPEALS
DECISION
DATED AND FILED

April 12, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP671**

Cir. Ct. No. 2021CV812

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

ROBERT E. LEE, KATHERINE A. LEE, GARY E. LEE, SPENCER LEE, NICOLE RAE LEE, SCOTT NIGBOR, JEANETTE F. NIGBOR, AARON KNOBLOCH, BRIAN LOKER AND MICHELLE A. LOKER,

   PLAINTIFFS-RESPONDENTS,

 V.

DIANNE E. KALLAS, DANIEL L. KALLAS, MARK A. KALLAS AND ROBERT J. O'KEEFE,

   DEFENDANTS-APPELLANTS,

KIM M. STAPLETON AND PAMER FARMS, LLP,

   DEFENDANTS.

---

APPEAL from an order of the circuit court for Winnebago County: SCOTT C. WOLDT, Judge. *Affirmed*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   In this partition action, Dianne E. Kallas, Daniel L. Kallas, Mark A. Kallas, and Robert J. O'Keefe (collectively, "the Kallases") appeal an order approving a referee's sale of real property to Michael J. Pamer for $600,001.  The Kallases assert the circuit court, exercising its equitable authority, erroneously exercised its discretion in three ways: (1) by amending the order appointing the referee to clarify that the referee could accept bids from parties lacking an ownership interest during a short window prior to listing with a broker; (2) by failing to comply with WIS. STAT. § 842.07 (2021-22)[1] before ordering that the property be put up for auction; and (3) by allowing the auction to proceed without public notice.  We reject these arguments and affirm because we conclude the court acted within the bounds of its discretion.

## BACKGROUND

¶2     Robert E. Lee, Katherine A. Lee, Gary E. Lee, Spencer Lee, Nicole Rae Lee, Scott Nigbor, Jeanette F. Nigbor, Aaron Knobloch, Brian Loker, and Michelle A. Loker (collectively, "the Lees") commenced this action to partition agricultural and recreational land in Winnebago County ("the Property").  The Property's ownership is heavily diluted, with fractional shares as little as 1/30th.  As an affirmative defense to the Lees' complaint, the Kallases asserted that they were "able to purchase the Property at a fair and equitable amount which would avoid unnecessary broker fees."  By amended complaint, Pamer Farms

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

LLP, which had leased the agricultural portion of the Property until December 2021, was joined as a party.

¶3 Shortly after filing the action, the Lees moved for the appointment of a referee. As grounds, the Lees asserted that the nature of the Property and the fractional interests involved made partition impossible as a matter of law. The Lees also suggested that a judicial sale would be prejudicial to the parties, as a sheriff's sale was unlikely to bring the best price. Citing a circuit court's authority to fashion an equitable remedy in partition actions, the Lees suggested that the referee be permitted to market and list the Property for sale using a licensed real estate broker. The Lees argued that a referee, exercising sound business judgment, would be able to obtain the best offer for the Property.

¶4 There was no opposition to the motion; the Lees' attorney represented at a hearing on the motion that because of the fractional interests "the parties I think are generally in agreement it should be sold." He requested that the referee be permitted to "seek opinions of valuation from realtors, but before he lists it, he lets the parties know and maybe we'll get an auction scenario." The Kallases' attorney agreed.

¶5 The circuit court's December 22, 2021 order authorized the referee to enter into a listing contract with a disinterested real estate broker, but it stated that prior to listing the Property with a broker, the referee was to notify the parties of the proposed listing price and allow for "a short period (in his discretion) during which the interested parties may come forward with offers at a price which the referee deems reasonable and acceptable." Upon receipt of an offer the referee deemed reasonable and acceptable, he was to move the court for an order approving the highest and best offer as well as authorization to complete the sale.

3

¶6 On February 23, 2022, the referee, by letter, informed the attorneys for the Lees and the Kallases that, based on various appraisals, he planned to list the Property for $564,000. Consistent with the circuit court's order, he requested that any party interested in purchasing the Property prior to listing should submit offers of no less than $475,000.[2] He received two offers: one from the Kallases for $478,000, and one from Michael J. Pamer, a principal for Pamer Farms, in the amount of $530,000. On March 22, 2022, the referee sought court approval to sell the Property to Pamer for the higher amount.

¶7 Meanwhile, Pamer Farms had failed to answer the amended complaint and had been defaulted, with the circuit court finding that Pamer Farms LLP had no lawful interest in the partition action. The Kallases asserted that Michael Pamer's bid should therefore be disregarded as inconsistent with the order appointing the referee, which referred to "interested parties." As a result, the Kallases argued they should be entitled to purchase the Property for $478,000.

¶8 The Lees disagreed with the Kallases' interpretation of the order, asserting their "narrow reading of 'interested parties' impedes the function of the Referee to strike a bargain to get the best and highest offer for the benefit of all named parties." Accordingly, they sought an amendment to the referee appointment order replacing the "interested parties" language with "potential buyers."[3]

---

[2] The requested offers were required to comply with a set of other conditions, including that the Property be taken as is with minimal contingencies.

[3] The circuit court ultimately entered an order adopting this amendment following a hearing on the motion.

¶9      The circuit court held a hearing on the amendment motion, at which time the Kallases' attorney suggested an alternative remedy to the interpretation dispute. He stated his clients were willing to raise their bid to one dollar over the Pamer offer to keep the Property in their family. In response, the Lees suggested that an auction would be appropriate. The court remarked that the purpose of the partition proceedings here, given the context, was "not to keep [the Property] in the family," but rather "to sell and obtain the highest price" for all the ownership interests.

¶10     The circuit court agreed with the Lees' suggestion of an auction, explaining: "the whole purpose of this statute is to obtain the highest value for all of the parties." The referee noted that there was a hearing scheduled for the following week regarding the motion for approval to accept the Pamer offer. The court stated that prior to that hearing, the referee could hold an auction in the courthouse at which any interested buyers could bid. The Kallases once again urged the court to accept their $530,001 offer in lieu of the auction, which the court declined to do. Alternatively, the Kallases' attorney requested that there be public notice of the auction. The court stated that it would leave that matter to the referee's discretion and handle any objections[4] to the manner of the auction at the time the referee requested approval of the sale.

¶11     At the conclusion of the hearing, the circuit court addressed the various arguments the Kallases had made regarding fairness. It stated its primary goal in this situation was to obtain the highest value for the Property to the benefit

---

[4] The circuit court stated that the Kallases could object if the referee failed to "fulfill[] his obligation to get the highest price[.]"

5

of all persons having an ownership interest. While it acknowledged that the Kallases had a legitimate objection to the Pamer offer under the language of the referee appointment order, it stated that it would not ignore a higher offer merely because the offer did not come from a party to the litigation.

¶12 The circuit court noted it was "tak[ing] into consideration in [its] fairness calculation the fact that family's involved and this is a family issue." In recognition of those matters, it treated the Kallases' offer of $530,001 as the current highest offer. The court viewed it as a waste of the referee's time to bid in one-dollar increments, so it required Pamer or any other interested bidder to exceed that offer by $10,000, which each subsequent bid increasing by a minimum of $10,000.

¶14 At the hearing the next week, the referee stated that he had conducted an auction in the courthouse just prior to the hearing and Pamer was the highest bidder at $600,001. The next-highest bid belonged to the Kallases at $590,001. Pamer and the Kallases were the only bidders, and the referee did not publish notice of the auction. The Kallases did not object to how the referee handled the auction. Following the hearing, the circuit court entered an order granting the referee authority to accept Pamer's bid and to effectuate the sale of the Property.

¶15 Thereafter, the Kallases filed a motion for reconsideration, raising many of the same arguments they make in this appeal and acknowledging that they were making an "extraordinary request" in asking that the order entered following the auction be vacated. As grounds, the Kallases argued they were the only party to have followed the court's instructions in the initial order appointing the referee, and therefore the Property should be sold to them for $478,000 or,

alternatively for $530,001. The Kallases also asserted the court had erred by ordering a sale without taking evidence at a trial, claiming the court could not fully appreciate the equities of the situation without hearing evidence "such as the nature of the fractional interests of the various property owners, the property's history and its uses, the property's sentimental value to the [Kallases], and other like considerations."[5] In any event, the Kallases requested that the sale be stayed pending a trial, or, alternatively, pending appeal. The court rejected these arguments and declined to enter a stay. The Kallases now appeal.

## DISCUSSION

¶16 The Lees first argue that the Kallases' appeal is moot because the sale to Pamer has been completed. "A case is moot when a judgment can have no practical legal effect upon the existing controversy." *State ex rel. Badke v. Village Bd. of Greendale*, 173 Wis. 2d 553, 568, 494 N.W.2d 408 (1993). Mootness is a question of law that we review de novo. *Marathon Cnty. v. D.K.*, 2020 WI 8, ¶16, 390 Wis. 2d 50, 937 N.W.2d 901.

¶17 This appeal is not moot because, despite the sale, our decision could still affect the disposition of the Property. A lis pendens filed early in this case provided notice that the present litigation may affect the real property. It also ensured that the Property remains "within the power of the court, so as to enable it to pronounce judgment upon it." *Gaugert v. Duve*, 2001 WI 83, ¶17, 244 Wis. 2d 691, 628 N.W.2d 861. A lis pendens must remain as long as there are pending

---

[5] To this end, the Kallases made an offer of proof that consisted of several affidavits describing these matters. At a hearing on the motion, the Kallases argued that they would not have agreed to the order appointing the referee if they knew that outside parties could submit offers and would instead have insisted that the partition action proceed to trial.

7

proceedings in an action, including appellate proceedings.[6] ***Zweber v. Melar Ltd.***, 2004 WI App 185, ¶15, 276 Wis. 2d 156, 687 N.W.2d 818. We therefore proceed to the merits of the appeal.

¶18 The common law of partition, now codified as part of WIS. STAT. ch. 842, involves the circuit court's exercise of its equitable authority. ***Klawitter v. Klawitter***, 2001 WI App 16, ¶7, 240 Wis. 2d 685, 623 N.W.2d 169. The Kallases arguments are generally framed as though this court is responsible for making an independent determination of what is equitable under the circumstances. That is not our standard of review. Rather, we apply the erroneous exercise of discretion standard when reviewing decisions in equity. ***Id.***, ¶8. A court's discretionary decisions will be upheld if the court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. ***Id.*** Even if this court would have acted differently, we may only overturn the circuit court's decisions if it erroneously exercised discretion.

¶19 The Kallases first argue that the circuit court's decision to amend the order appointing the referee was inequitable. They assert that the initial order was limited to the parties to the litigation for good reason: because the court's responsibility is to do equity as to those parties. Further, noting that they collectively own an approximately forty percent share of the Property, the Kallases argue the court did not give adequate consideration to the sentimental value of the

---

[6] Additionally, any assertion that this appeal is moot is on its face absurd. It was only the court order at issue that permitted Pamer to take ownership. If we reversed that order, naturally the sale would have to be unwound, as there would be no judicial authority supporting the forced sale of the Kallases' ownership interests.

Property to them. They argue that, at a minimum, "in equity and fairness, the [circuit] court should have provided the parties to the action with an opportunity to present admissible evidence … such as that set forth in Mark Kallas' Affidavit, filed in support of the Kallases['] Motion for Reconsideration …."

¶20     As we are limited by our standard of review, we conclude the circuit court did not erroneously exercise its discretion when it amended the referee appointment order. To the extent the Kallases argue that the court was required to limit the referee's authority to consider only offers from parties with an ownership interest, they have not established any legal basis for such a requirement. They appear merely to argue that this is how they construed the initial order, and their construction is the only plausible interpretation of that order.

¶21     To the contrary, the order was ambiguous about who was an "interested party" permitted to submit offers. An "interested party" could be construed as referring only to those having ownership interests; it could also be construed to include parties who had some legal or pecuniary interest in the property.[7] *See* **Cashin v. Cashin**, 2004 WI App 92, ¶11, 273 Wis. 2d 754, 681 N.W.2d 255 (holding that ambiguity exists when the language used gives rise to two or more reasonable interpretations). When a circuit court is presented with a request to resolve ambiguity in its orders, we will affirm the court's clarification if it was based on a reasonable rationale in light of the court's experience with the case. *Id.*, ¶12. Here, the court reasonably determined that the equities favored a sale at the highest possible price. Once it had made that determination, non-party

---

[7] Regarding the former construction, we note that Pamer Farms remained a party to this litigation at the time the referee solicited initial offers.

bidding was a relevant consideration for all parties to the action, as a higher sale price benefitted all owners.[8]

¶22    We also reject the Kallases' assertion that the circuit court failed to adequately consider their emotional investment in the Property.   No one disputed—or disputes even now—that a sale was the best option for the Property. The Kallases merely assert that the circuit court should have accepted their lower offers given their interest in keeping the Property in their family.   But the court was within its discretion to prioritize obtaining the highest sale price versus ensuring that a sale was made to individuals with longstanding or sentimental ties to the Property.

¶23    Though the Kallases fault the circuit court for failing to take additional evidence, we are unpersuaded that testimony or other evidence was necessary under the circumstances.   Prior to the amendment to the referee appointment order, the Kallases' attorney had made clear to the court that the Property had been "in the family for over a hundred years" and that they had a significant attachment to it.   The court explicitly stated that its analysis of the equities included consideration of these matters.   The Kallases did not request an evidentiary hearing to further establish the point, and they have not established that such a hearing would have altered in any fashion the court's weighing of the equities.   *See* **Burkes v. Hales**, 165 Wis. 2d 585, 591, 478 N.W.2d 37 (Ct. App. 1991) (noting that because the exercise of discretion is essential to the circuit

---

[8] Given our holding in this regard, we similarly reject the Kallases' argument that reversal is warranted because the amended order was "inconsistent" with the original order.   The parties differed in their interpretations of the order, and both interpretations were reasonable.   The amended order was "inconsistent" only in the sense that the court rejected the Kallases' desired interpretation based on its determination that the equities favored the highest possible sale price.

court's functioning, we generally look for reasons to sustain discretionary decisions).

¶24     The Kallases also argue that the auction ordered by the circuit court was inconsistent with the provisions of WIS. STAT. ch. 842, including WIS. STAT. § 842.07.  To the extent the Kallases focus on § 842.07's "[o]n default and proof or after trial of issues" language, we have already concluded that testimony or other evidence was unnecessary given the agreement by the parties that a sale was appropriate.

¶25     Otherwise, the Kallases concede that a court sitting in equity may in the exercise of its discretion order a private sale.  That concession is well-taken, as "the [circuit] court is not restricted to the statutory remedies—partition along undisputed lines or partition by sheriff's sale—but it is within the discretion of the [circuit] court to order any remedy, including a private sale by the parties, that is equitable."  *Schmit v. Klumpyan*, 2003 WI App 107, ¶22, 264 Wis. 2d 414, 663 N.W.2d 331.  As such, the Kallases have not established that the auction ordered by the court here violates any provision of WIS. STAT. ch. 842.

¶26     Finally, the Kallases argue the manner of conducting the auction was inequitable because there was no public notice of the auction.  The Kallases certainly make a compelling argument regarding the equities favoring a public auction—one that may even have succeeded if we were reviewing this matter de novo.  Having identified the highest and best offer as the predominant goal of the underlying litigation, the better practice would have been for the circuit court to order a public auction.  However, we agree with the Lees that the lack of public notice is not a basis for concluding the circuit court erroneously exercised its discretion under the circumstances here.

¶13    Specifically, there is no evidence that a higher offer would have resulted had the auction been publicly noticed.  Indeed, Pamer's winning bid of $600,001 was well in excess of the referee's anticipated listing price of $564,000—even more so when considering that no broker commission was necessary.  The appellate Record reflects that the Property sold at a value substantially higher than its estimated fair-market value and that the Kallases did not object during the confirmation-of-sale hearing.  In all, we perceive no basis for overturning the circuit court's order authorizing the referee to accept Pamer's bid and complete the sale of the Property.  Accordingly, our standard of review requires that we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.