COURT OF APPEALS
DECISION
DATED AND FILED

March 31, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1600**

**STATE OF WISCONSIN**

Cir. Ct. No.  2017CV600

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN EX REL. MARK A. STEPHENS,

    PETITIONER-APPELLANT,

 V.

KEVIN A. CARR,

    RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Reversed.*

Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM Mark Stephens brought this certiorari action in circuit court to challenge a decision of the secretary of the Wisconsin Department of Corrections (the Department) to dismiss a complaint that Stephens pursued, without success, through the Department's administrative process.   Stephens is currently serving the initial confinement portion of a sentence of imprisonment that was imposed in 2006.   His complaint is that the Department violated a restitution-related order contained in the judgment of conviction (JOC).   The order states:  "Restitution to be paid as a condition of Extended Supervision within the first 5 years."   Stephens contends that, because he has yet to begin the extended supervision portion of his sentence, the Department must honor the court order by waiting until that portion begins before starting to collect restitution payments from Stephens.   The circuit court rejected that argument and affirmed the Department's denial.

¶2     The Department makes the following alternative arguments:  (1) the order in the JOC does not by its terms prevent the Department from making deductions from Stephens' inmate trust account before the start of the extended supervision portion of the sentence, or (2) even if the order directs the Department to begin collections only after Stephens begins serving the period of extended supervision, the Department has such "broad authority" to make deductions from inmate trust accounts that it "is not limited by" the court's order.

¶3     We reject the Department's first argument based on a plain language interpretation of the order.  We reject the Department's second argument based on the recent interpretation of pertinent statutes by this court.  *See State ex rel. Ortiz v. Carr*, No. 2020AP1394, slip op. recommended for publication (WI App Mar. 17, 2022).   Accordingly, we conclude that the Department did not act

according to law in denying Stephens's inmate complaint and reverse the order of the circuit court affirming the Department's decision.[1]

## BACKGROUND

¶4 Stephens was convicted of armed robbery and was sentenced in January 2006 by the Waukesha County Circuit Court. The sentence is for 20 years of initial confinement, followed by 20 years of extended supervision, consecutive to another sentence. The court ordered Stephens to pay $5,354.91 in restitution. The JOC contains a single "comment" regarding "restitution," which states in full: "Restitution to be paid as a condition of Extended Supervision within the first 5 years."[2]

---

[1] For three separate reasons, we decline to address a separate challenge that Stephens may intend to make to the Department's activities—namely, that the Department is applying an improper percentage rate to the deductions from his account for restitution. First, given our determination that restitution may not be collected until Stephens is on extended supervision, any such argument regarding current deductions for restitution may be moot. *See PRN Assocs. LLC v. DOA*, 2009 WI 53, ¶25, 317 Wis. 2d 656, 766 N.W.2d 559 ("An issue is moot when its resolution will have no practical effect on the underlying controversy."). Second, in the alternative, we agree with the Department that any such argument would fail for lack of development. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (appellate courts may decline to address undeveloped and inadequately briefed issues). Third, also in the alternative, we further agree with the Department that we should ignore these references based on Stephens's failure to raise this as an issue in the administrative complaint process. *See Bunker v. LIRC*, 2002 WI App 216, ¶15, 257 Wis. 2d 255, 650 N.W.2d 864 (a party must raise an issue before the administrative agency to preserve it for judicial review and a reviewing court can, but ordinarily will not, consider unpreserved issues). Stephens fails to explain why we should address this issue in this appeal despite his forfeiture. Thus, Stephens concedes the forfeiture point by failing to reply to the Department's argument. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to argument made in response brief may be taken as concession).

[2] The JOC also stated, "Costs to be paid as a condition of Extended Supervision," but neither party develops an argument that this separate direction is pertinent to our analysis in this appeal.

Separately, we ignore in our quotations of the order and our discussion of it that it has a typographical error, misspelling "restitution."

¶5      Stephens filed the inmate complaint at issue in December 2016. He objected to the Department deducting funds from his inmate trust account for payment of restitution during his current period of initial confinement, given the order's direction that restitution is "to be paid" "within the first 5 years" of his period of extended supervision.

¶6      An "institution complaint examiner" recommended that the complaint be dismissed. The warden of the correctional institution accepted that recommendation. Stephens appealed to a "corrections complaint examiner," expressing frustration that the order in the JOC was not being honored by the Department. This examiner recommended dismissal of the appeal, taking the same position as the prior two officials. This examiner cited legal authority that the examiner submitted stands for the proposition that the Department has exclusive authority over deductions from the accounts of inmates during their periods of initial confinement. The Department secretary accepted this recommendation without elaboration.

¶7      In none of these decisions did any of these officials dispute that the order, by its terms, directs that Stephens's restitution was to be paid during the first five years of the extended supervision portion of his sentence as a condition of extended supervision. Instead, they took the shared position that, as a matter of law, the Department has exclusive authority to make deductions for restitution from inmate accounts.

¶8      Stephens filed a petition for a writ of certiorari in the Dane County Circuit Court in March 2017, naming the then-secretary of the Department as the

respondent.[3] Proceedings in the circuit court were stayed for an extended period to await the results of an appeal in a separate case, but that appeal ended up being dismissed on mootness grounds. In August 2020, the circuit affirmed the Department's decision and accordingly dismissed the writ of certiorari. Stephens appeals, pro se.

## DISCUSSION

¶9 In an appeal of a decision made as part of a certiorari action of this type, we review the challenged agency action and not the circuit court certiorari decision regarding the agency action. *Ortiz*, No. 2020AP1394, ¶18. Our review is limited to:

> "(1) whether the [Department] acted within the bounds of its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will, not its judgment; and (4) whether the evidence was sufficient that the [Department] might reasonably make the determination that it did."

*Id.* (quoting *State ex rel. Greer v. Wiedenhoeft*, 2014 WI 19, ¶35, 353 Wis. 2d 307, 845 N.W.2d 373 (alterations in original)). The issue here is whether the Department acted "according to law" in dismissing the complaint, which is an issue that we review de novo. *Id.*

---

[3] Jon Litscher was Department secretary when Stephens's complaint was dismissed, but that position is now filled by Kevin Carr. Because Stephens named Litscher in his official capacity, we have changed the caption to substitute Carr as the secretary. *See* WIS. STAT. § 803.10(4)(a) (2019-20) ("When a public officer … is a party to an action in an official capacity and during its pendency … ceases to hold office, the action does not abate and the successor is automatically substituted as a party.").

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶10     We first interpret the order in the JOC and then address the Department's argument that it has authority to ignore the order.

## I.  Interpretation Of The Order

### A.  Legal Standards For Interpreting The JOC

¶11     We interpret the language of the order in the JOC.  This presents an issue of law that we review de novo.  ***Ortiz***, No. 2020AP1394, ¶22.

¶12     We approach this task in the same way that we interpret "other written instruments and, as such, the judgment must be considered 'in context.'" ***Id.*** (quoting ***Estate of Schultz v. Schultz***, 194 Wis. 2d 799, 805, 535 N.W.2d 116 (Ct. App. 1995)).  That is, "we consider the circumstances present at the time of entry, and, as with contracts, we do not consider the meaning of particular provisions of the judgment in isolation but in the context of the whole judgment." ***Cashin v. Cashin***, 2004 WI App 92, ¶11, 273 Wis. 2d 754, 681 N.W.2d 255. Language in a court order is ambiguous if it is "subject to two or more reasonable interpretations, either on its face or as applied to the extrinsic facts to which it refers," but it is not ambiguous if that is not the case.  *See **id.***

### B.  Analysis

¶13     The Department argues that the terms of the order do "not prohibit" it from making deductions before the commencement of the extended supervision portion of Stephens's sentence of imprisonment.  We reject this argument.

¶14     We discern no ambiguity in the language of the order, either based on the specific words used or when that language is considered in the context of the JOC as a whole or any other pertinent context.  As for the specific words, we

see no reasonable way to interpret "[r]estitution to be paid as a condition of Extended Supervision within the first 5 years" other than as a direction that restitution is to be collected from Stephens exclusively during the initial five years of Stephens's extended supervision. "To be paid … within" could only reasonably be interpreted to mean "must be" ("[t]o be") paid during ("within") the five-year period, in part because the payments are "a condition of Extended Supervision." Thus, the short order, by its simple terms, effectively sets the deduction rate at zero for the entire period of initial confinement.

¶15 Turning to context, we discern no other feature of the JOC or the general context of the armed robbery case that points in a different direction, and the Department does not provide any such. As for legal context, WIS. STAT. § 973.20(10)(a) provides in pertinent part that a sentencing court "may require that restitution be paid immediately, *within a specified period* or in specified installments." (Emphasis added).[4] The order fits neatly in this legal context. The

---

[4] Under the 2003-04 version of the statutes in effect at the time Stephens was sentenced, WIS. STAT. § 973.20(10) did not include any subparts. But the text of the current subpart (10)(a) is identical to part of the text of the prior § 973.20(10). *See* 2015 Wis. Act 355, § 13 ("Act 355"). Thus, for ease of reference, we refer to the text of § 973.20(10)(a) as it appears in the 2019-20 version of the statutes.

As we explained in *State ex rel. Ortiz v. Carr*, No. 2020AP1394, slip op. recommended for publication (WI App Mar. 17, 2022), under Act 355 and WIS. STAT. § 973.20(11)(c), sentencing courts are to order the defendant "'to authorize the department to collect, from the defendant's wages and from other moneys held in the defendant's prisoner's account, an amount or a percentage the department determines is reasonable for payment to victims.'" *Ortiz*, No. 2020AP1394, ¶12 (quoting Act 355, § 15).

However, as it did in *Ortiz*, the Department takes the position in this appeal that it "does not and need not use Act 355 to take this deduction action." Accordingly, the statutory changes are not at issue in this appeal, and we do not rely on WIS. STAT. §§ 301.32(1) and 973.20(11)(c) as amended by Act 355.

court availed itself of its authority to specify the period within which Stephens was obligated to make restitution payments.

¶16    The Department does not suggest that there is any ambiguity about the meaning of "the first 5 years" or "Extended Supervision." Nor does it suggest that "paid" is any different, in effect, than the Department's withdrawal of funds from Stephens's inmate account while he is in prison to reduce his ordered restitution amount. Instead, it provides what we consider to be an unreasonable interpretation of the meaning of the combination of the terms "to be paid … within." The Department contends that the order does not set "a start date" for restitution payments, but merely sets "an end-date," namely, the end of the fifth year of extended supervision. We conclude that this is not a reasonable interpretation because these are additional ideas, not reflected in the order, that would have required different or additional terms to convey. One way of putting this is that, at least without additional or different language in the order, there is not a reasonable way here to interpret "within" to mean "no later than."

¶17    The Department directs our attention to additional language in WIS. STAT. § 973.20(10)(a) which provides that "the end of a specified period shall not be later than the end of any period of … extended supervision." The Department's argument about end dates is difficult to follow. It is sufficient to observe that the quoted language from § 973.20(10)(a) merely places one criterion for an end date on all specified periods, but that it does not otherwise limit the discretion of sentencing courts in selecting specified periods for restitution payments.

¶18    The Department notes that the sentencing court had statutory authority to decide on a *different* specified period for deductions than it selected. But this is beside the point.

¶19     On a related note, the Department suggests that the order should not be interpreted to have the effect of depriving the victim in this case of potential restitution payments during the first 20 years of Stephens's sentence, because this would have been an unreasonable or absurd decision by the sentencing court. However, the Department fails to develop an argument that the circuit court could not have reasonably weighed all relevant considerations, including respect for the rights of crime victims, to determine that the specified period for deductions that it set best served the court's sentencing goals.

## II.  Requirement That Department Honor Order

¶20     The Department argues that, even if the order is properly interpreted as we have just explained, the Department has "broad authority" to make deductions and that this authority "is not limited by" the court's order.

¶21     More specifically, the Department contends that under WIS. STAT. § 301.32(1) and *State ex rel. Markovic v. Litscher*, 2018 WI App 44, 383 Wis. 2d 576, 916 N.W.2d 202, it is authorized to deduct money from Stephens's inmate account in advance of the commencement of his extended supervision period because those deductions are for Stephens's benefit, regardless of the specified period stated in the order.

### A.  Legal Standards For Interpreting Statutes And *Ortiz*

¶22     We resolve this issue based on interpretations of statutory language and authority that includes the *Ortiz* opinion.  "Interpretation and application of statutes and case law to a set of facts are matters of law that we decide de novo." *Meyers v. Bayer AG, Bayer Corp.*, 2007 WI 99, ¶22, 303 Wis. 2d 295, 735 N.W.2d 448.

9

### B. Application Of *Ortiz*

¶23   We briefly summarize *Ortiz* and then explain why statements in *Ortiz* defeat the arguments that the Department makes here.

¶24   The JOC at issue there stated in pertinent part: "'Court ordered restitution to be paid from 25% of prison wages.'" *Ortiz*, No. 2020AP1394, ¶1. Ortiz contended that the Department violated this order when it deducted, for purposes of restitution payments, 50% of Ortiz's prison wages and gifted funds from his prison account. *Id.* The Department argued that this rate of deduction was not contrary to law in part because the Department has the exclusive authority to determine the percentage or amount that is deducted from a prison inmates wages and gifted funds, regardless of amounts specified by sentencing courts. *Id.*, ¶2.

¶25   We concluded that the JOC required the Department to deduct exactly 25% from Ortiz's prison wages for restitution. *Id.*, ¶3. More generally, we concluded that the sentencing court under the circumstances had "the authority to determine the percentage or amount that is to be deducted from Ortiz's prison wages to satisfy his restitution obligation, that the Department is required to adhere to the sentencing court's order regarding deductions," and that "the Department does not have exclusive authority in that regard." *Id.*

¶26   Pertinent here, we specifically addressed arguments advanced by the Department based on WIS. STAT. § 301.32(1) (pre-Act 355) and *Markovic* that are equivalent to the arguments that the Department makes here. *See Ortiz*, No. 2020AP1394, ¶¶39-42 (discussing § 301.32(1) (2008-09)).

¶27 We need not repeat here the analysis regarding WIS. STAT. § 301.32(1) and *Markovic* that may be found at ¶¶39-42 of *Ortiz*. It is sufficient to highlight our explanation that *Markovic* does not interpret § 301.32(1) to establish what the Department claimed it did, namely, that "the Department has the exclusive authority to set restitution deduction percentages" or that "the Department can set restitution deduction percentages contrary to the terms of a court order." *Ortiz*, No. 2020AP1394, ¶41 (citing *Markovic*, 383 Wis. 2d 576, ¶33). Instead, as we explained in *Ortiz*, *Markovic* establishes the more limited proposition that "the Department is authorized to use money delivered to a prisoner's account to satisfy unpaid restitution because paying restitution provides a benefit to the prisoner." *Ortiz*, No. 2020AP1394, ¶41 (citing *Markovic*, 383 Wis. 2d 576, ¶33).

¶28 On the surface, the specific issue in *Ortiz*, involving the rate at which the Department could make deductions for restitution, differs from the specific issue here, involving the timing of deductions for restitution. However, as noted above, the order here had the effect of setting at the rate or amount of *zero* what the Department could deduct *during the period of initial confinement*, rendering the order here directly analogous to the order in *Ortiz*. Thus, here as in *Ortiz* we are presented with the issue of whether WIS. STAT. § 301.32(1) allows the Department to deduct funds in excess of the rate set by the JOC. Further, the Department fails to present an argument in favor of its position that is not defeated by the reasoning in *Ortiz*. For example, the Department fails to develop an argument that the time period identified in the order here was not "a specified period" as that phrase is used in WIS. STAT. § 973.20(10)(a) and as discussed in *Ortiz*.

11

### III. Remedies / Relief

¶29    Stephens asks that we "order the return of all funds taken for restitution." The Department is silent on this issue.[5]

¶30    The court explained the following in *Markovic*:

> It is well established that "the powers of a court sitting in certiorari are by definition limited" and that in certiorari actions a circuit court must apply the four-part inquiry set forth at the start of this discussion section. We have held that in conducting this inquiry, the circuit court may "either affirm or reverse on review" or "remand for limited purposes." Courts in certiorari actions have no authority to order agencies to perform specific acts, such as awarding damages or monetary relief.

*Markovic*, 383 Wis. 2d 576, ¶41 (citations omitted). This includes a limitation on the ability of "'a circuit court sitting in certiorari'" to "'entertain equitable arguments'" such as arguments for monetary relief. *Id.*, ¶42 (quoted source omitted). Thus, the only available relief in this case is for the circuit court to grant the writ and reverse the complaint decision.

¶31    Separately, Stephens asks us to award him costs and fees for pursuing this appeal as the prevailing party. A prevailing party seeking to recover costs must file a statement of costs within fourteen days after this court issues a decision in the appeal. *See* WIS. STAT. RULE 809.25(1)(c). We note, however, that the respondent in this appeal is the Department and that costs may not be taxed against the State or its agencies without express statutory authorization. *See*

---

[5] We are disappointed by the incomplete briefing by the Department, which ignores the remedies issue raised by Stephens.

***DOT v. Wisconsin Pers. Comm.***, 176 Wis. 2d 731, 736, 500 N.W.2d 664 (1993); ***Sheely v. DHSS***, 150 Wis. 2d 320, 329, 442 N.W.2d 1 (1989).

## CONCLUSION

¶32    For all these reasons, we reverse and remand to the circuit court with directions that the court grant the writ for certiorari and reverse the Department's decision dismissing the inmate complaint.

*By the Court*.—Order reversed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.